Marc J. Randazza, Esq., NV Bar #12265
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax
mjr@randazza.com

Attorneys for Plaintiff,
Liberty Media Holdings, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC | Case No. _____ |
| Plaintiff, | **FILED UNDER SEAL** |
| vs. | **COMPLAINT** |
| SERGEJ LETYAGIN, d/b/a SUNPORNO.COM, IDEAL CONSULT, LTD., "ADVERT", "CASTA", "TRIKSTER", "WORKER", "LIKIS", "TESTER" and DOES 1-50 | **(1) DIRECT COPYRIGHT INFRINGEMENT;**<br>**(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>**(3) VICARIOUS COPYRIGHT INFRINGEMENT;**<br>**(4) INDUCEMENT OF COPYRIGHT INFRINGEMENT** |
| Defendants | **INJUNCTIVE RELIEF REQUESTED** |

**LIBERTY MEDIA HOLDINGS, L.L.C.** files this Complaint against multiple Defendants for violations of its intellectual property rights, namely Liberty's copyrights, which are being infringed upon by multiple persons.

The Plaintiff respectfully requests the relief requested herein. For just cause, the Plaintiff will show the Court as follows:

## INTRODUCTION

1. This action is filed by Liberty Media Holdings, LLC (hereinafter Liberty or Plaintiff), to recover damages arising from infringement of Plaintiff's copyrights in its creative works by the Defendant, either directly or indirectly, through use of the SunPorno website found at www.sunporno.com. See **Exhibit 1**.

Case 2:12-cv-00923-LRH-GWF Document 1 SEALED Filed 05/31/12 Page 2 of 25

2.     SunPorno.com (hereinafter SunPorno) is owned and operated by an individual or group of individuals who have taken steps to keep their identities hidden (for obvious reasons). However, some of them have been positively identified.  Others will be identified during discovery.

3.     The Defendants copied, reproduced and distributed certain Plaintiff-owned works through www.sunporno.com.

4.     Does 1-50 are employees of, agents for, or registered members of the SunPorno website.  They remain presently unidentified.

5.     The Defendants' actions were willful in nature, entitling Plaintiff to enhanced damages.  The Plaintiff seeks statutory damages, actual damages, an award of its attorneys' fees and costs of suit, as well as injunctive relief.

## THE PARTIES

### The Plaintiff, Liberty Media Holdings, LLC

6.     Liberty Media Holdings, LLC is a California limited liability company doing business as CORBIN FISHER®, with a principal place of business in Las Vegas, Nevada.

7.     Plaintiff Liberty produces, markets, and distributes adult-oriented audiovisual works under the registered marks CORBIN FISHER®, and CORBIN FISHER'S AMATEUR COLLEGE SEX®, including photographs, books, DVDs, and through the operation of a website.   At this website, individuals purchase monthly subscriptions to view Plaintiff's photographic works and audiovisual content.

8.     Liberty's website has "free tour" areas where G-Rated photographs may be viewed, but its more explicit erotic works are only available to individuals who pay a monthly subscription fee or who purchase a DVD from Liberty.

9.     Liberty prohibits persons who are under the age of 18 from accessing the more explicit areas of its website, and does not sell its DVDs to minors.

### Sergej Letyagin

10.     Sergej Letyagin d/b/a SunPorno.com a/k/a Serge Letyagin, (hereinafter "Letyagin") attempted to obscure his true identity and location through the use of privacy services, misleading information, and omission of information.

11.    Upon information and belief, Letyagin appears to be the owner, operator and/or primary stakeholder in SunPorno.com.

12.    Defendant Letyagin utilizes various techniques to obscure his true location by using privacy services registrants in the United Kingdom and off-shore companies in Gibraltar and the Seychelles.

13.    Letyagin, however, claims to reside in the Czech Republic in the city of Prague. See **Exhibit 2** ¶ 4; **Exhibit 3**.  However, his actual whereabouts are unknown, and likely change on a regular basis due to his criminal nature and criminal activites.

14.    Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

### Ideal Consult, Ltd.

15.    Ideal Consult, Ltd. purports to be to be a Seychellois corporation.  This company is listed as the domain name registrant for the SunPorno.com domain name, and thus is a proper Defendant in this action.

16.    However, on information and belief, this corporation is a sham entity and is merely an alter ego of Mr. Letyagin.

17.    Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

### SunPorno User "advert"

18.    SunPorno user "advert" (hereinafter advert) was a member or administrator of the SunPorno website, previously registered under the screen name advert.  When the true identity of advert is discovered, this complaint will be amended to include his or her true name.

19.    On information and belief, advert was an administrator, officer, owner or other insider at SunPorno.

20.     Advert was responsible for uploading the Liberty copyrighted work "Noah and Mandy" to the SunPorno website.  This video had been viewed 14,478 times with a 100% "like" rating as of September 21, 2011.  See **Exhibit 5**.

21.     Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

### SunPorno User "Casta"

22.     SunPorno user "Casta" (hereinafter Casta) was a member or administrator of the SunPorno website, previously registered under the screen name Casta.  When the true identity of Casta is discovered, this complaint will be amended to include his or her true name.

23.     On information and belief, Casta was an administrator, officer, owner or other insider at SunPorno.

24.     Casta was responsible for uploading the Liberty copyrighted work "Josh and Mandy" to the SunPorno website.  This video had been viewed 98,965 times with a 90% "like" rating as of September 21, 2011.  See **Exhibit 6**.

25.     Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

### SunPorno User "Trikster"

26.     SunPorno user "Trikster" (hereinafter Trikster) was a member or administrator of the SunPorno website, previously registered under the screen name Trikster.  When the true identity of Trikster is discovered, this complaint will be amended to include his or her true name.

27.     On information and belief, Trikster was an administrator, officer, owner or other insider at SunPorno.

28.     Trikster was responsible for uploading the Liberty copyrighted work "Dawson and Mandy" to the SunPorno website.  This video had been viewed 6,386 times with a 100% "like" rating as of September 21, 2011.  See **Exhibit 7**.

29.     Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

### SunPorno User "tester"

30.     SunPorno user "tester" (hereinafter tester) was a member of the SunPorno website, previously registered under the screen name tester.  When the true identity of tester is discovered, this complaint will be amended to include his or her true name.

31.     Tester was responsible for uploading the Liberty copyrighted work "Chris and Mandy" to the SunPorno website.  This video had been viewed 4,470 times with a 61% "like" rating as of September 21, 2011.  See **Exhibit 8**.

32.     Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

### SunPorno User "likis"

33.     SunPorno user "likis" (hereinafter likis) was a member or administrator of the SunPorno website, previously registered under the screen name likis.  When the true identity of likis is discovered, this complaint will be amended to include his or her true name.

34.     On information and belief, likis was an administrator, officer, owner or other insider at SunPorno.

35.     Likis was responsible for uploading the Liberty copyrighted work "Tanner and Mandy" to the SunPorno website.  This video had been viewed 13,075 times with a 78% "like" rating as of September 21, 2011.  See **Exhibit 9**.

36.     Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

**SunPorno User "worker"**

37.     SunPorno user "worker" (hereinafter worker) was a member or administrator of the SunPorno website, previously registered under the screen name worker.  When the true identity of worker is discovered, this complaint will be amended to include his or her true name.

38.     Worker was responsible for uploading the Liberty copyrighted work "Philip Fucks Trey" (renamed "Passionate college gay boys having sex on the sofa" on SunPorno) to the SunPorno website.  This video had been viewed 34,929 times with a 90% "like" rating as of September 21, 2011.  See **Exhibit 10**.

39.     Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

**Does 1-50**

40.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants sued herein as Does 1-50 are unknown to Plaintiff, which sues said Defendants by fictitious names.  If necessary, Plaintiff will seek leave of this Court to further amend this complaint to state these Defendants' true names and capacities.

41.     Plaintiff is informed and believes, and on that basis alleges, that these Doe Defendants should also be subject to the relief requested herein.

42.     Defendant Does 1-50 assisted, conspired with, or acted in conjunction with the other Defendants in order to abuse the illegal activities complained of.  Plaintiff intends to amend this Complaint when the true names of any Doe defendant become known.

43.     Plaintiff avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or

1  representative of each and every, all and singular, the other Defendants, and acted to further the
2  ends of the illegal and improper purposes alleged herein in a common course or scheme to
3  infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

4  ## JURISDICTION AND VENUE

5  44.    This Court has subject matter jurisdiction pursuant to the Copyright Act.   17
6  U.S.C. §§ 101 et seq.

7  45.    This Court has personal jurisdiction over the Defendants, who have engaged in
8  business activities in and directed to this district, and have committed tortious acts within this
9  district or directed at this district.

10  46.    The Defendants are subject to personal jurisdiction in the District of Nevada by
11  virtue of systematic and continuous contacts with the district, thus satisfying the Nevada long-
12  arm statute, Nev. Rev. Stat. § 14.065.

13  47.    If the Defendants are not subject to jurisdiction under the Nevada long-arm
14  statute, they are subject to jurisdiction in the United States Federal Courts pursuant to Fed. R.
15  Civ. P. 4(k)(2), since the Defendants use a U.S.-based DMCA agent for the receipt of copyright
16  infringement notices and the Defendants are not likely amenable to jurisdiction in any particular
17  U.S. state.

18  48.    In the event that the Defendants claim that they are not subject to jurisdiction in
19  this district, it is incumbent upon them to suggest an alternative jurisdiction.

20  49.    When Letyagin established his website, he did so from Internet Protocol addresses
21  (IP addresses) in California.  **Exhibit 4.**

22  50.    The SunPorno.com domain name was, at all relevant times, registered in the
23  United States, listed a United States address, and contracted with a United States domain name
24  registrar and a United States domain name privacy service, all to commit the wrongs alleged
25  herein.    **Exhibits 11, 12**.  This registration was not a mere one-off transaction.    The
26  SunPorno.com domain name, like 1,150 of the Defendant's other domain names (as disclosed in
27  **Exhibits 13, 14**), was registered and reregistered with this U.S. entity using a contract with a
28  Florida forum selection clause, at least 1,150 times.

51.     Furthermore, the domain was registered with full knowledge that Moniker was in the United States.  **Exhibit 12** (Defendant's exhibit showing Moniker as a Florida business, with its other addresses in Portland, Oregon and Los Angeles, CA).

52.     The SunPorno.com website is hosted in Ohio.  **Exhibit 15.**  The primary traffic from their website is from the United States.  **Exhibit 16.**  Their webpage displays the American flag to represent English (not the Union Jack); their advertisements use American celebrities and American measurements.  See **Exhibits 17, 1, 5-10.**

53.     More than 443,832 <u>unique</u> Americans per month enter into some kind of transaction with the Defendants.[1]  In doing so, they route through Ohio based web servers.  **Exhibit 16.**  The United States is the Defendant's largest market and the Defendant's website is <u>available</u> in the United States, gathers its library of copyrighted materials from United States producers, and redistributes it to hundreds of thousands of Americas.  The loss of the U.S. market would be devastating to it.

54.     The Defendant's website is entirely in English.  See **Exhibits 1, 5-10, 19, 22, 23, 27.**  The Defendants website serves its 443,832 to 1.6 million American visitors per month from American servers, using American agents, and collecting American money.

55.     SunPorno.com displays advertisements featuring an American actor, Ron Jeremy.  **Exhibits 6, 7.**  Other ads clearly target Americans, such as advertisements for penis enlargement, which use inches instead of centimeters.  **Exhibits 8, 9.**

56.     The website's signup form clearly and unequivocally targets United States residents.  It has drop down menus thereupon which are pre-populated with United States as the member's country of origin and a space to fill in U.S. zip codes.  **Exhibits 19, 23.**

57.     Furthermore, every page on SunPorno.com displays an American flag in the upper-right hand corner of the page to select English – not the Union Jack.  **Exhibits 1, 5-10, 19, 27.**

58.     When a user opts to sign up for a premium membership on SunPorno.com, they are directed to a website that links to terms and conditions of membership that clearly target

---

[1] **Exhibit 20**, however, shows 1.6 million American visitors per month.

1   Americans.  **Exhibit 22.**  These terms and conditions go so far as to explicitly list the states in
2   which the minimum age for majority is 21 and list them by their United States postal
3   abbreviations: "AL, MS, NE, WY".  *Id.* at 2.  Further, these terms explicitly state that the user
4   represents and warrants that they "have not notified any governmental agency, **including the**
5   **U.S. Postal Service**, that [they] do not wish to receive sexually oriented material." (emphasis
6   added)  *Id.* at 2.  The site then goes on to link to a list of restricted zip codes from the United
7   States. *Id.* at 3.

8        59.    As advert, Casta, Trikster, worker, likis, and tester uploaded the Plaintiff's
9   copyrighted materials to this website and they are (most likely) principals or employees of
10  SunPorno, they, too, are subject to jurisdiction in the United States.

11       60.    As Letyagin provided the platform, support and means for uploading the
12  Plaintiff's copyrighted materials to this U.S.-based website and he was the signatory to the
13  Moniker domain name services account for SunPorno..com, he, too, is subject to jurisdiction in
14  the United States under Rule 4(k)(2).

15       61.    As Ideal Consult, Ltd. provided the platform, support and means for uploading the
16  Plaintiff's copyrighted materials to this U.S.-based website and is the listed agent for
17  SunPorno.com, it too, is subject to jurisdiction in the United States under Rule 4(k)(2).

18       62.    Furthermore, as Letyagin and Ideal Consult, Ltd. are merely alter egos of each
19  other, they are both equally subject to jurisdiction in the district.

20       63.    Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c) and (d); and 28
21  U.S.C. §1400(a).

22                              **STATEMENT OF FACTS**

23       64.    SunPorno is a website that provides adult-themed audiovisual content to its
24  members.  Many of the works available on the website appear to be copyrighted videos.  These
25  videos are stolen from a number of adult entertainment companies, including Plaintiff.  While the
26  site is free for members to join and view, as well as download, a large number of videos
27  (including at least 6 of Plaintiff's works), SunPorno also provides premium memberships
28  through a third party company, www.csmembers.com.  See **Exhibit 18**.  Memberships also allow
    members to sign up to view DVD quality movies and download these movies in HD formats.
    See **Exhibit 19**.

Case 2:12-cv-00923-LRH-GWF Document 8 SEALED Filed 05/31/12 Page 25 of 25

65.     Defendant's business model of using unauthorized works without compensation has significantly contributed to the ability of the Defendant to become one of the most visited sites in the world.  Defendant offers unauthorized content for free that legitimate competitors must pay for, with extraordinary results.  Defendant then sells premium access to unauthorized content with more extraordinary results.  An illegitimate business model where the cost of goods sold is zero will be able to drive out legitimate competitors.

66.     The SunPorno.com website is visited by over 1,500,000 Internet surfers per day. **Exhibit 20**.  Alexa, a website ranking service, ranks SunPorno.com as number 1,279 in the most visited websites in the world.  **Exhibit 21**.  As a comparison, Google.com and Facebook.com are ranked 1 and 2, respectively, while NBC.com and NBA.com are ranked 1,638 and 2,193, respectively.

67.     Upon information and belief, Defendant Letyagin has created, owns, and/or operates the internet website www.sunporno.com.  In concert with the other Defendants, Defendant Letyagin uses this site to display and distribute Plaintiff's films to Internet users. Defendant Letyagin and the other Defendants each know, or have reason to know, that there is no proper license or authority to display and distribute Plaintiff's films on the website to obtain commercial and financial gain from such display and distribution.  Defendants use the website to gather a vast and extensive collection of infringed films to display and distribute.  The fundamental purpose of the website is to capitalize on the illegal dissemination of infringing works.  This display and distribution provides Defendant Letyagin with significant monthly revenues, and hinders Plaintiff's rightful ability to derive financial benefits from their own films.

68.     Upon information and belief, the high volume of internet traffic generated at SunPorno.com is due to the presentation of viewing the infringed works available for free, rather than obtaining the viewing rights legally and knowingly paying for such rights.

69.     SunPorno operates a webmasters program, wherein it provides additional services to webmasters, allowing them to, and encouraging them to assist SunPorno in its illegal endeavor for monetary compensation.

70.     Defendant pays third parties to send web users, also known as traffic, to Defendant's website.  Details of Defendant's webmaster program will be determined during discovery.

71.     Defendant allows third parties to display Plaintiff's intellectual property to third parties on third party websites for the purpose of driving traffic back to SunPorno. SunPorno has enabled this feature by providing an "embed code" for every video on its site. An Internet user can copy and paste the embed code on another website where the video can then be viewed. The number of views displayed on SunPorno does not reflect the number of views on secondary sites utilizing the embed code. This significantly increases the number of views, further contributing to the number of copyright infringements and contributing further to the dilution of the Plaintiff's trade and service marks.

72.     Defendants have taken advantage of the existence of legitimate websites that properly facilitate the exchange of user-generated content. Defendant SunPorno is truly a subscription membership website hiding behind the veneer of a simple user-generated content exchange site. The SunPorno website sells premium memberships to its website and pays third parties to send traffic to its websites like a membership website. The SunPorno.com website is designed for the sole purpose of taking commercial advantage of copyrighted works without any authority whatsoever and to derive financial benefit from the copyrighted works. This significant commercial and financial advantage is obtained without purchasing or licensing any rights from the copyright holder nor incurring the significant expense of creating and generating the content itself.

73.     SunPorno's business model also depends on ad generated income and profits. Each page displaying free video content has several banner ads and often has side bar ads as well.

74.     SunPorno awards members "tokens" for signing up and has additional tokens available for sale. These tokens are redeemable for live chat sessions with models posting directly to the site. These tokens are valued at per minute rates based upon the desirability of the content (i.e., group live events are 2 tokens per minute whereas private shows with top-rated models are 25 tokens per minute). SunPorno could not, and would not be able to, sell these tokens without attracting viewers to the site by using the Plaintiff's copyrighted works.

75.     The SunPorno.com website does not initially allow users to view high-quality versions of Plaintiff's films or download Plaintiff's films to the user's computer, although the entire film was available at a lower quality via the website's streaming service. If the internet

user wishes to download the motion pictures or view them in high-definition, the user is presented with the option of becoming a Premium member to receive such services.  Upon entering personal information, the user is then asked to "provide a valid credit card for age verification." This "Free Membership" is subject to the terms and conditions which state that "[a]ll Trial Memberships will renew automatically to a one-month membership at the end of the Trial Period and will be billed at the rate of $39.95/month or the then applicable rate, unless cancelled."  If the user does not uncheck the "Bonus Offer" the user is also made a member of XXXHDVault.com ("membership renews at $49.95/monthly, unless cancelled"); EroticDVDsOnline.com ("renews at $29.95/monthly, unless cancelled"); or "[i]f you don't qualify for this offer, we will substitute it with UncommonPorn.com … recurring at $39.62 monthly, until cancelled." These forced, hidden memberships allow defendants to commercially benefit from Plaintiff's works without any benefit to Plaintiff.  **Exhibit 2 ¶ 7.** See also **Exhibits 22, 23**.

76.     The Internet user, initially led to believe that Defendant's website is a completely free viewing site, is presented with paid options to enhance the viewing experience of unauthorized works owned by Plaintiff and other copyright holders.  The user is permitted to download the films only with further financial benefit to Defendant.  Defendants give away unauthorized viewing of Plaintiff's property then sell unauthorized copies of Plaintiff's property without any benefit to Plaintiff.

77.     Although Liberty takes steps to keep its materials out of the hands of minors, SunPorno took no such protective steps, thus potentially circumventing Liberty's strong "no minors" policy.

78.     Neither SunPorno nor the individual viewing the pirated material pays anything to the actual copyright owner of the pirated materials.

79.     SunPorno's library of illicitly obtained materials does not appear magically or accidentally.  SunPorno depends on an army of agents, members, and employees to upload the content.

80.     Plaintiff Liberty discovered 6 copies of its copyrighted material illegally shared on Defendant's website.  See **Exhibit 24 ¶ 4-6**.  A list of the copyrighted works, as well as the

1  URL of the infringing copy on SunPorno, as available at the time of the initial complaint in the

2  Florida action, is available at **Exhibit 25**.

3        81.    Plaintiff conducted an investigation, which revealed that SunPorno did not have a

4  registered DMCA Agent as required by 17 U.S.C. §512(c)(2) to qualify for the DMCA safe

5  harbor provisions.  **Exhibit 24 ¶ 16**.  Since being given notice of the claims herein, SunPorno

6  has retained a DMCA agent.  However, as SunPorno did not have a DMCA Agent at the time of

7  the infringements, it is precluded from raising a DMCA defense for infringements that took place

8  prior to their reactive registration of a DMCA Agent.

9        82.    The SunPorno website is a massive collection of copyright infringements, and

10 Letyagin, Ideal Consult, Ltd., advert, Casta, Trikster, worker, likis, tester and Does 1-50 are

11 massive copyright infringers.  Defendants publish illicitly obtained copyrighted materials to lure

12 potential members to their website, and engages in this illicit activity for profit.

13       83.    The principals of SunPorno and the other corporate Defendants, both known and

14 unknown are equally liable for all acts complained of herein.

15       84.    In addition to memberships sold through its website, Plaintiff sells its copyrighted

16 audiovisual material in DVD format.  Sales occur through various channels, including wholesale

17 distribution for down-channel retail distribution.  Plaintiff also markets its products through

18 third-party licenses.

19       85.    The audiovisual works at issue are valuable, and easily discernable as

20 professionally produced works.  Plaintiff Liberty created the works using highly talented

21 performers, directors, cinematographers, lighting technicians, set designers, and editors.  Plaintiff

22 Liberty created the works using the highest quality cameras, lighting, and editing equipment.

23       86.    Neither the individuals supplying the copyrighted works to the Defendants, nor

24 the SunPorno website, nor any other Defendants, determines the true and correct owners of the

25 copyrighted works.  This is true although both the individuals transferring and the Defendant

26 receiving and distributing these works are actually or constructively aware, should be aware, or

27 are willfully blind that the copyrights belong to entities other than the individuals or Defendants.

28 Both the individuals supplying the works and the Defendant distributing the intellectual property

   fail and refuse to apply for proper licensing and further fail to determine the identity and age of

   the actors appearing in the works as required by law.

87.     SunPorno earns revenue by using free content to draw members to the site and then incentivizing members with redeemable tokens, as well as advertisements.  SunPorno is able to sell tokens based on the number and quality of videos available on its website and is able to sell ad space based on its site's daily hits and number of members, which in turn is influenced by the number of new videos uploaded as well as their quality and desirability.

88.     All of Plaintiff's works appearing on the SunPorno website are highly rated by the site, and therefore are a large draw for its current and future members.  See **Exhibits 5 through 10**.  The Plaintiff's works appearing on Defendant's site received an average of an 87% "like" rating by members, with the works receiving over 172,000 views.

89.     Plaintiff sells its videos online for an average price of approximately $5.00 each, if they are downloaded individually off the Plaintiff's website.  At this price, these viewership figures support an actual damages award of approximately $860,000, with the precise amount to be determined at trial.

90.     Defendants' unauthorized reproduction, public display, and distribution of Plaintiff Liberty's works serve as an inducement, attracting many individuals to sign up for memberships to the SunPorno website, who profit the Defendants by clicking through on other paid ads to other sponsors of the SunPorno website and by purchasing additional tokens.

91.     Defendants actively engage in, promote, and induce copyright infringement. Each infringing act occurred on www.sunporno.com.

92.     Plaintiff Liberty's employees discovered and documented that Defendants reproduced, publicly displayed, and distributed through the SunPorno website at least 6 unauthorized video files copyrighted by and belonging to Plaintiff.  **Exhibit 24 ¶ 4-6**. SunPorno's customers viewed the illegally and improperly obtained intellectual property, and downloaded the property, thus making more copies thereof.

93.     Defendants' business model depends on the uploading, posting, displaying, and performance of copyrighted audiovisual works belonging to Plaintiff Liberty.  Defendants intentionally, knowingly, negligently, or by willful blindness, built a library of works that infringed on copyrighted material for drawing internet traffic to sign up memberships to view the works in order to sell ad space on its website, creating substantial revenues thereby.

94.     Defendant intentionally, knowingly, negligently, or through willful blindness, chose to avoid reasonable precautions to deter rampant copyright infringement on the SunPorno website.

95.     Defendants make no attempt to identify the individuals providing the works, where the individuals obtained the works, or whether the individuals had authority to further reproduce and distribute the works.

96.     Defendants' acts and omissions allow them to profit by their infringement while imposing on copyright owners a monetary burden to monitor SunPorno without sufficient means to prevent continued and unabated infringement.

97.     Prior to releasing its works into the market on the Internet or in DVD format, Plaintiff Liberty marks each work with a copyright notice.  Plaintiff Liberty's labels reflect its true business address and a statement that it maintains age authentication records at that address, as required by 18 U.S.C. §2257.

98.     Plaintiff Liberty prominently displays its copyright mark on its website, and prominently displays its trademark on its films.

99.     Defendants' infringements harmed and continue to harm Plaintiff Liberty and others legally deriving the benefits of Plaintiff Liberty's creative works.  Defendants' continued infringements undermine Plaintiff Liberty and other creative enterprises that produce audiovisual works.

100.    Plaintiff Liberty seeks immediate redress, as follows:

    a.  A declaration that Defendants' conduct in reproducing and distributing Plaintiff's copyrighted works without authorization willfully infringes Plaintiff Liberty's copyrights;

    b.  A permanent injunction requiring Defendants employ reasonable methods and/or technologies preventing or limiting infringement of Plaintiff Liberty's copyrights;

    c.  Statutory damages for Defendants' past and present willful infringement, or actual damages plus profits.

    d.  A seizure of all the instrumentalities of the Defendants' illegal acts.

**FIRST CAUSE OF ACTION**

**Copyright Infringement – 17 U.S.C. §§101 *Et. Seq.***
**Against Defendants Letyagin, Ideal Consult, Ltd., advert, Casta,**
**Trikster, tester, likis and worker**

101.    Plaintiff repeats and incorporates by reference as if *verbatim*, each and every paragraph previous to this section, inclusive.

102.    Plaintiff Liberty holds the copyright on all of the six infringed works alleged in this action.  See **Exhibit 26**.

103.    Plaintiff Liberty registered each copyright with the United States Patent and Copyright Office.  See **Exhibit 26**.

104.    The number of infringed copyrights grows daily.  Plaintiff reserves the right to file supplemental updates to **Exhibit 26**.

105.    At all pertinent times, Plaintiff Liberty was the producer and registered owner of the audiovisual works illegally and improperly reproduced and distributed by Defendants through the SunPorno website.

106.    Defendants reproduced, reformatted, and distributed Plaintiff Liberty's copyrighted works by and through servers and/or other hardware owned, operated, and/or controlled by Defendant Letyagin.

107.    Defendants infringed Plaintiff's copyrights by reproducing and distributing the works through the SunPorno website without proper approval or authorization of Plaintiff.

108.    Defendants knew or should have reasonably known they did not have permission to exploit Plaintiff Liberty's works on the SunPorno website and further knew or should have known their acts constituted copyright infringement.

109.    Defendants made no attempt to discovery the copyright owners of the pirated works before exploiting them.  Defendants failed and refused to take any reasonable measure to determine the owner or license holder of copyrighted works.

110.    Defendants engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate they engaged actively in the improper collection and distribution of Plaintiff Liberty's copyright works.

111.    The quantity of copyright files available to Internet users increased the attractiveness of the SunPorno website's services to its customers, increased its membership base, and increased its sales revenue.

112.    SunPorno actively encouraged users to upload pirated copyrighted files.

113.    Defendants controlled the files removed from the SunPorno website and determined which files remained.

114.    SunPorno never adopted procedures to ensure that distribution of Liberty's copyrighted material would not occur.  While SunPorno established a DMCA agent and DMCA notification page following the filing of the initial complaint in this action, SunPorno has yet to establish, implement, communicate, or enforce a "repeat infringer" policy.  See **Exhibit 24 ¶ 16**.

115.    Defendant Letyagin was aware, either actually or constructively, should have been aware, or was willfully blind that pirated copyrighted materials comprised popular videos on the SunPorno website.

116.    Defendants affirmatively and willfully accommodated Internet traffic generated by the illegal acts, and profited therefrom.

117.    On information and belief, Defendant Letyagin will claim that it is not responsible for the content on its website and that all of the content is "user-generated."  As a primary matter, content is not "user-generated" but rather "user-posted" at best.  However, on information and belief, and on that basis Plaintiff alleges, Letyagin directs, controls or otherwise uploads content to his own website including, but not limited, to the content which is the subject of this complaint.

118.    Although Letyagin will likely claim that the content was uploaded by third parties, five of the six motion pictures at issues in this action all contain the same actress, known as "Mandy."  It is highly unlikely that five different users would sift through all of the hundreds upon hundreds of Corbin Fisher titles, and only five movies starring "Mandy" happened to be selected by five unrelated users to be uploaded to this website.  It is a statistical impossibility that this could be coincidental, strongly suggesting that the posting of these materials is not done by unrelated third parties, but is actually done by Letyagin himself, or Ideal Consult, Ltd., itself, using alias usernames, or that the usernames that performed the uploading are somehow linked.

119.    Further, each user profile lists the user's age, gender, the date they joined the website, the number of videos they have watched on the website, the number of videos they have uploaded, and the number of people who have watched videos the user has uploaded.  **Exhibit 24 ¶ 8**.

120.    The following four usernames appear to have been administrators or site management: Casta, advert, likis and Trikster.  Before these accounts were deleted, they all listed join dates of "01 January 1970."  Members are not provided with the ability to change their join dates.  These members viewed zero videos while uploading thousands.  Unlike most members, these members do not utilize the social features of the profile called "connections" and "favorite videos."  **Exhibit 24 ¶ 10-13**; **Exhibit 27**.

121.    Profile pages also allow other members to leave comments directed at the member.  On the profile page for Casta, another member requested explanation as to why one of the videos they attempted to upload was denied.  **Exhibit 24 ¶ 14**; **Exhibit 27**.  This question would only be directed toward an administrator or moderator.

122.    Based upon the manner in which these accounts were set up and utilized, it is highly unlikely that they were typical users and most likely have additional rights and permissions commonly restricted to administrators, moderators, webmasters or other enforcers of site policy.  **Exhibit 24 ¶ 11, 15**.

123.    Defendants' conduct was willful within the meaning of 17 U.S.C. §101, *et. seq.*  At a minimum, Defendants acted with willful blindness and reckless disregard of Plaintiff Liberty's registered copyrights.

124.    Because of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement.  See 17 U.S.C. §501.  Plaintiff suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

125.    The law permits Plaintiff to recover damages, including readily ascertainable direct losses and all profits Defendants made by their wrongful conduct.  17 U.S.C. §504.  Alternatively, the law permits Plaintiff Liberty to recover statutory damages.  17 U.S.C. §504(c).

126.    Because of Defendants' willful infringement, the law permits enhancement of the allowable statutory damages.  17 U.S.C. §504(c)(2).

127.    The law permits Plaintiff injunctive relief.  17 U.S.C. §502.  Further, the law permits a Court Order impounding any and all infringing materials.  17 U.S.C. §503.

128.    Plaintiff Liberty has no complete remedy at law for Defendants' wrongful conduct as follows:

  a.  Plaintiff's copyrights are unique and valuable property having no readily determinable market value;

  b.  Defendants' infringement harms Plaintiff's business reputation and goodwill such that Plaintiff could not be made whole by any monetary award; and,

  c.  Defendants' wrongful conduct damages to Plaintiff are continuing and unremitting.

129.    Plaintiff is entitled to preliminary and permanent injunctive relief prohibiting further infringement of Plaintiff's copyrights.  17 U.S.C. §502.

130.    Plaintiff is entitled to actual or statutory damages, to be elected by Plaintiff.

### SECOND CAUSE OF ACTION

### Contributory Copyright Infringement
### Against Defendants Letyagin and Ideal Consult, Ltd.

131.    Plaintiff re-alleges and incorporates by reference as if *verbatim*, each and every paragraph previous to this section, inclusive.

132.    Advert, Casta, Trikster, tester, likis, and worker, without authorization reproduced and distributed Plaintiff Liberty's works through Defendant Letyagin's website, directly infringing Plaintiff Liberty's copyrighted works.

133.    Letyagin and Ideal Consult, Ltd. contributed to the infringing acts of those individuals.

134.    Letyagin and Ideal Consult, Ltd. were aware, should have been aware, or were willfully blind to the infringing activity.

135.    Letyagin and Ideal Consult, Ltd. aided, abetted, allowed, and encouraged those individuals to reproduce and distribute Plaintiff Liberty's copyrighted works through its website without regard to copyright ownership.

136.    Letyagin and Ideal Consult, Ltd. had the obligation and ability to control and stop the infringements and failed to do so.

Case 2:12-cv-00923-LRH-GWF Document 8 SEALED Filed 05/31/12 Page 20 of 25

137.    Letyagin and Ideal Consult, Ltd. materially contributed to the infringement.

138.    Letyagin and Ideal Consult, Ltd. received direct financial benefits from the infringements.

139.    All Defendants had actual, constructive or should have had actual or constructive knowledge of the infringing acts.

140.    The conduct, acts, and omission of all Defendants demonstrate contributory copyright infringement.

### **THIRD CAUSE OF ACTION**

### **Contributory Copyright Infringement**
**Against Defendants Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, and worker**

141.    Plaintiff re-alleges and incorporates by reference as if *verbatim*, each and every paragraph previous to this section, inclusive.

142.    Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, and worker, without authorization reproduced and distributed Plaintiff Liberty's works through Defendant Letyagin's website, directly infringing Plaintiff Liberty's copyrighted works.

143.    Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, and worker contributed to the infringing acts of the SunPorno website.

144.    Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, and worker were aware, should have been aware, or were willfully blind to the infringing activity.

145.    Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, and worker aided, abetted, allowed, and encouraged the SunPorno website to reproduce and distribute Plaintiff Liberty's copyrighted works through its website without regard to copyright ownership.

146.    Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, and worker had the obligation and ability to control and stop the infringements and failed to do so.

147.    Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, and worker materially contributed to the infringement.

148.    All Defendants had actual, constructive or should have had actual or constructive knowledge of the infringing acts.

149.    The conduct, acts, and omission of all Defendants demonstrate contributory copyright infringement.

## FOURTH CAUSE OF ACTION

### Vicarious Copyright Infringement
### Against Defendants Letyagin, Ideal Consult, Ltd., advert, Casta,
### Trikster, tester, likis, and worker

150.   Plaintiff re-alleges and incorporates by reference as if *verbatim*, each and every paragraph previous to this section, inclusive.

151.   Without authorization, individuals reproduced, distributed, and publicly displayed Plaintiff Liberty's works through the SunPorno website, directly infringing Plaintiff Liberty's copyrighted works.

152.   Defendants were actually or constructively aware, should have been aware or were willfully blind to the infringing activity.

153.   Defendants were able to control or completely end the illegal and improper infringement, but failed and refused to do so.

154.   Defendants contributed materially to the infringement.

155.   Defendants received direct financial gain and profit from those infringing activates.

156.   The acts, omissions, and conduct of all Defendants constitute vicarious copyright infringement.

## FIFTH CAUSE OF ACTION

### Inducement of Copyright Infringement
### Against Defendants Letyagin and Ideal Consult, Ltd.

157.   Plaintiff re-alleges and incorporates by reference as if *verbatim*, each and every paragraph previous to this section, inclusive.

158.   Defendants designed and distributed technology and devices and induced individuals to use this technology to promote the use of infringed and copyrighted material.  As a direct and proximate result of Defendants' inducement, individuals infringed Plaintiff Liberty's copyrighted works.   These individuals reproduced, distributed and publicly disseminated Plaintiff's copyrighted works through Defendant Letyagin's and Defendant Ideal Consult, Ltd.'s website, SunPorno.com.

159.   Defendants' inducements were willful, knowing or negligent and, at all pertinent times, Defendant acted in disregard of and with indifference to Plaintiff's copyrights.

**SIXTH CAUSE OF ACTION**
**Declaratory Judgment of Alter Ego Status**
**Against Defendants Letyagin and Ideal Consult, Ltd.**

160.    Plaintiff re-alleges and incorporates by reference as if *verbatim*, each and every paragraph previous to this section, inclusive.

161.    Defendant Letyagin is, and at all pertinent times was, the sole owner of the SunPorno.com website.

162.    On information and belief, Defendants Letyagin and Ideal Consult, Ltd. are alter egos of each other.

163.    There exists, and at all pertinent times existed, a unity of interest in ownership between Defendants Letyagin and Ideal Consult, Ltd.   Any individuality and separateness between Defendants ceased and Defendant Letyagin is the alter ego of Defendant Ideal Consult, Ltd., as follows:

a.   Defendants Letyagin and Ideal Consult, Ltd. commingled funds and other assets for their own convenience and to assist in evading payment of obligations;

b.   Defendant Letyagin controlled, dominated and operated Defendant Ideal Consult, Ltd. as his individual business and alter ego, carried out the activities and business of Defendant Ideal Consult, Ltd. without holding directors' and shareholders' meetings, and without maintaining adequate records or minutes of corporate proceedings;

c.   Defendant Letyagin failed to adequately capitalize Defendant Ideal Consult, Ltd.;

d.   Defendant Ideal Consult, Ltd. is, and at all pertinent times was, a mere shell, instrumentality, and conduit through which Defendant Letyagin carried on personal business in a corporate name as if the corporation were unincorporated;

e.   Defendant Letyagin exercised compelte control and dominance to an extent that any individuality or separateness of Defendants Letyagin and Ideal Consult, Ltd. does not presently exist and did not exist in the past.

Case 2:12-cv-00923-LRH-GWF   Document 8 SEALED   Filed 05/31/12   Page 23 of 25

164. The separate existence of Defendant Ideal Consult, Ltd. as an entity distinct from Defendant Letyagin is a fiction. Recognition of this fiction permits the court to find an abuse of corporate privilege and to declare the entities to be alter egos of each other.

## DAMAGES

165. The videos at issue in this action have been viewed for a total of 172,303 times. See **Exhibits 5 through 10**.

166. The cheapest comparable video options on Corbin Fisher's pay-per-view site, Corbin Fisher Select, are $3.95. See **Exhibit 28 ¶ 8**. If these views had been paid, even at the lowest available rate, this would total $680,596.85. See **Exhibit 28 ¶ 9a-f**.

167. The Copyright Act permits the Plaintiff to elect to statutory damages, and Plaintiff reserves the right to do so. In the event Plaintiff elects to do so, statutory damages in this case will be up to $900,000.

## PRAYER FOR RELIF

**WHEREFORE,** Plaintiff Liberty respectfully requests the Court hereby:

(1) Enter a judgment declaring that all Defendants, jointly and severally, with a common plan, purpose or scheme, willfully infringed Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. §501 through direct, contributory, vicarious and inducing acts;

(2) Issue declaratory and injunctive relief against all Defendants, their agents, representatives, servants, employees, attorneys, successors and assignees, and all others acting in concert or participation with them, and further enjoin and restrain all Defendants and others from copying, posting or making any other infringing distribution of Plaintiff's audiovisual works, photographs or other materials;

(3) Issue injunctive and declaratory relief against Defendants Letyagin, Ideal Consult, Ltd., advert, Casta, Trikster, tester, likis, worker, and Does 1-50 and their agents, representatives, servants, employees, attorneys, successors and assignees, and all others acting in concert or participation with them, be enjoined and restrained from engaging in further acts of copyright infringement; and if they are unable to

comply, then this Court should issue an order shutting down the SunPorno website completely;

(4) Enter an order of impoundment pursuant to 17 U.S.C. §§503 and 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in Defendants' possession or under their control and impounding the instrumentalities of the infringement including, but not limited to, the SunPorno.com domain name;

(5) Enter an order enjoining Defendants from disposition of any domain names registered to them, or other property, until full and final settlement of any and all money judgments;

(6) Enter an order requiring a full and complete accounting of all amounts due and owing to Plaintiff Liberty as a result of their illegal or improper activity, whether criminal or civil in nature, of any and all Defendants, each and singular, jointly or severally;

(7) Enter an order directing the Defendants pay Plaintiff damages as follows:

  a. Maximum enhanced statutory damages of $150,000 per infringed work pursuant to 17 U.S.C. §504(c)(2), for Defendants' willful infringement of Plaintiff Liberty's copyrights; or

  b. Plaintiff Liberty's actual damages and Defendants' profits; and,

(8) Enter an order directing the Defendants pay Plaintiff Liberty both the costs of action and the reasonable attorney's fees incurred by it in prosecuting this action pursuant to 17 U.S.C. §505;

(9) Enter an order directing the Defendants pay pre- and post-judgment interested at the highest legal rate;

(10) Grant to Plaintiff Liberty whatever and further relief, either in law or in equity, to which this Honorable Court deems them fit to receive.

Dated: May 31, 2012                                    Respectfully Submitted,

                                                       *s/ Marc J. Randazza*

                                                       Marc J. Randazza, Esq., (12265)
                                                       mjr@randazza.com
                                                       Randazza Legal Group
                                                       6525 W. Warm Springs Rd., Suite 100
                                                       Las Vegas, NV 89118
                                                       (888) 667-1113
                                                       (305) 437-7662 fax