1    JAMES D. BOYLE, ESQ.
     Nevada Bar No. 008384
2    E-mail:  jboyle@nevadafirm.com
     COTTON, DRIGGS, WALCH,
3    HOLLEY, WOLOSON & THOMPSON
     400 South Fourth Street, Third Floor
4    Las Vegas, Nevada 89101
     Telephone:     702/791-0308
5    Facsimile:     702/791-1912

6
     EVAN FRAY-WITZER, ESQ.
7    Massachusetts Bar No. 564349
     E-mail: Evan@CFWLegal.com
8    CIAMPA FRAY-WITZER, LLP
     20 Park Plaza, Suite 804
9    Boston, Massachusetts  02116
     Telephone:     617/426-0000
10
11   VALENTIN DAVID GURVITS, ESQ.
     Massachusetts Bar No. 643572
12   Email: vgurvits@BostonLawGroup.com
     BOSTON LAW GROUP, PC
13   825 Beacon Street, Suite 20
     Newton, Massachusetts  02459
14   Telephone:     617/928-1804

15   *Pro Hac Vice Applications Pending*

16   *Attorneys for Defendants Sergej Letyagin and Ideal Consult, LTD.*

17
18                   **UNITED STATES DISTRICT COURT**

19                          **DISTRICT OF NEVADA**

20   LIBERTY MEDIA HOLDINGS LLC,
                                              CASE NO.:     2:12-cv-00923-LRH-(GWF)
21          Plaintiff,
                                              **DEFENDANTS SERGEJ LETYAGIN AND**
22          v.                                **IDEAL CONSULT, LTD.'S**
                                              **MOTION AND MEMORANDUM IN**
23   SERGEJ LETYAGIN, d/b/a                    **SUPPORT OF MOTION TO DISMISS**
     SUNPORNO.COM, IDEAL CONSULT,             **FOR LACK OF PERSONAL**
24   LTD., "ADVERT", "CASTA",                 **JURISDICTION**
     "TRIKSTER", "WORKER", "LIKIS",
25   "TESTER" and DOES 1-50,

26          Defendants.

27          Pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Sergej Letyagin and Ideal Consult,

28

                                         - 1 -

1    LTD., by and through their undersigned counsel, hereby move this Court for entry of an Order

2    dismissing Plaintiff Liberty Media Holdings, LLC's complaint.  This Motion is based upon the

3    pleadings and records on file herein, the Memorandum of Points and Authorities set forth below,

4    and the oral argument of counsel presented to this Court, if any.

5                          **MEMORANDUM OF POINTS AND AUTHORITIES**

6                          **I.      INTRODUCTION**

7            In what can only be seen as a direct attempt to shop its way into a more sympathetic

8    judicial forum, Plaintiff Liberty Media Holdings ("LMH") has resurrected claims identical to

9    those which it brought – and then allowed to be dismissed when it became apparent that the court

10   there was skeptical of its claims –in the Southern District of Florida.  Indeed, in presenting its

11   case to this Court on an *ex parte* (and largely under seal) basis, LMH appears to have neglected

12   to fully inform this Court of the prior rulings (and prior procedural history) of the Florida court,

13   opting instead to present a partial picture at a time when its account could not be challenged by

14   the Defendants.

15           For the same reasons that the Florida court doubted that LMH could lawfully assert

16   personal jurisdiction over the defendants under either Florida's long arm statute or the federal

17   long arm statute, Fed. R. Civ. P. 4(k)(2), personal jurisdiction is also lacking in this Court over

18   Sergej Letyagin ("Mr. Letyagin"), a resident of the Czech Republic, and Ideal Consult, Ltd.

19   ("Ideal"), a Seychelles company.  Because this Court cannot assert personal jurisdiction over

20   these defendants in conformity with the Due Process Clause of the United States Constitution,

21   the complaint against them must be dismissed.[1]

22           In further support of this Memorandum, the defendants state as follows.

23

24

---

[1] For purposes of this Motion, Defendants limit their arguments to the lack of personal jurisdiction and grounds
warranting dismissal pursuant to FRCP 12(b)(2).  Nevertheless, Defendants also believe that this Court lacks subject
matter jurisdiction insofar as Plaintiff is attempting to exert an improper extra-territorial application of copyright
law, and therefore dismissal is also proper pursuant to FRCP 12(b)(1).  Accordingly, Defendants hereby reserve the
subject matter jurisdiction issue.  In addition, the Defendants also have substantive defenses to the claims raised by
LMH – including defenses afforded by the Digital Millennium Copyright Act – but confine the present motion to the
gateway personal jurisdictional issue, which is more appropriately suited to a Rule 12 motion to dismiss.

09627-01/Motion to Dismiss - Final.doc

## II.     FACTS

### A.     THE PARTIES

Ideal is a company headquartered in Seychelles.  *See* Affidavit of Sergej Letyagin, attached hereto as **Exhibit 1**.  Ideal owns and operates thousands of different websites, primarily offering adult entertainment.  *Id*.  Ideal does not maintain (and has never maintained) any servers within Nevada, has no employees in (and has never had any in) Nevada, does not advertise in (and has never advertised in) Nevada, owns no real estate in (and has never owned any real estate in) Nevada, pays no taxes in (and has never paid taxes in) Nevada, and has no bank accounts in (and has never had any bank accounts in) Nevada.  *Id*.

Similarly, Ideal does not itself maintain any servers within the United States,[2] has no employees in (and has never had any in) the United States, does not advertise in (and has never advertised in) the United States, owns no real estate in (and has never owned any real estate in) the United States, pays no taxes in (and has never paid taxes in) the United States, and has no bank accounts in (and has never had any bank accounts in) the United States.  *Id*. Mr. Letyagin is an individual residing in the Czech Republic and is the Director of Technology for Ideal.  *Id.*  He does not now, nor has he ever, individually owned Sunporno.com or any of the other websites referenced in Plaintiff's complaint.  *Id.*  He has no connections with Nevada at all and, indeed, he has never even visited the United States.  *Id.*

And, despite the scurrilous and unfounded allegation in the Complaint that Mr. Letyagin is some sort of criminal mastermind, moving from hidden location to hidden location, Mr. Letyagin has resided at the same address in the Czech Republic for more than three years.  *Id.* **Moreover, Mr. Letyagin's address is well known to the Plaintiff and Plaintiff's counsel, who used this address to correspond with Mr. Letyagin in the course of the Florida**

---

[2] As is explained in Mr. Letyagin's Affidavit, Ideal contracts with a third-party, Profitrade PLC, doing business as "AdvancedHosters," which provides Ideal with the server space to run the SunPorno website.  Profitrade – the company with which Ideal actually has a contractual relationship with respect to servers – is located in the Commonwealth of Dominica.  Ideal has been informed by Profitrade that the servers used for the SunPorno.com website are located in Holland and Virginia.  Ideal has no control over which servers Profitrade utilizes to host SunPorno.com content and, again, the only relevant agreement is between Ideal, a Seychellois company and Profitrade, a Dominica company.

09627-01/Motion to Dismiss - Final.doc

1  **litigation.** *See, e.g.,* Letyagin Affidavit and **Exhibit 2**, letter from Marc Randazza to Sergey

2  Letyagin.[3]

3      In July of 2011, Ideal first obtained the already-existing website, SunPorno.com, along

4  with a number of others. At the time of this acquisition, the Sunporno.com domain had already

5  been registered by its prior owners through a registrar based in Florida, Moniker Online

6  Services.[4] In August of 2011, after reviewing business costs, Ideal decided that it could obtain

7  domain registration and privacy services at a lower cost than it was receiving from Moniker.

8  *Letyagin Affidavit.* As a result, in late 2011, Ideal moved all of the domains previously hosted by

9  Moniker to UK-based registrar, EvoNames.[5] *Id.*

10     With respect to advertisements that appear on the SunPorno.com website, Ideal has no

11  control over which advertisements are displayed. Ideal contracts with three advertising

12  ---

[3] It is particularly disturbing that these allegations were made not only in the Complaint, but that similar allegations were apparently made to this Court in *ex parte* sealed filings. For example, in his declaration in support LMH's motion for alternate service, Plaintiff's counsel states both that he "previously dealt with [defendants'] evasion of service in a prior case," and that, if the motion was not heard on an *ex parte* basis, the defendants would "disable all existing email addresses in order to further evade service." *See Docket No. 4*, recently unsealed by this Court. Counsel, however, knew these assertions to be patently untrue when made. To the contrary, and despite knowing both Mr. Letyagin's home address and the address of Ideal's agent for service of process, the Plaintiff never *attempted* service in the prior action. Instead, on January 15, 2012, Plaintiff's counsel wrote to defendants' counsel: "I'm working up an amended complaint, pricing out someone to stalk sergey in Prague, etc. before I blow that kind of money, does he want to cash this case out?" *See* **Exhibit 3**, email of Marc Randazza to Val Gurvits. On January 30, 2012, the Florida Court issued an order instructing LMH that if it did not effectuate service of process on the defendants by March 12, 2012, the case would be dismissed. *See* **Exhibit 4.** Apparently not wanting to expend the money necessary to effectuate proper service consistent with the requirements of due process, the Plaintiff did nothing, resulting in the dismissal of the Florida action. *See* **Exhibit 5.** The Plaintiff then filed the present case, with identical allegations, and obtained from this Court leave to utilize alternative service, thereby accomplishing in this Court (by withholding crucial information) what it was unable to do in the prior litigation. Such conduct would not appear to be in accordance with the dictates of the Nevada Rules of Professional Conduct, Rule 3.3(d)("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.")

[4] Registrars are entities accredited by ICANN to provide internet registration services. Registration of a domain name through a registrar does nothing more than ensure that, when a person types a domain name into a web browser, the person is directed to the proper location where the website's files are stored. The assignment of a domain name might be considered analogous to the assignment of a telephone number. And, as with a telephone number, the change of carriers (for example, from Sprint to Verizon) has no effect on the ownership of the phone number in question. *See, e.g., Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010), quoted in *Liberty Media Holdings v. Letyagin*, Case No. 11-62107, Docket No. 47, attached as **Exhibit 6**.

[5] Ironically, LMH cites the fact that Ideal purchased websites previously registered with a Florida registrar as evidence that jurisdiction is proper here in Nevada. It does so despite the fact that Florida rejected its argument that the same fact supported a finding of personal jurisdiction in Florida. *Liberty Media Holdings v. Letyagin*, *supra* at p. 6 ("The Court agrees that merely registering a domain name with a company in Florida is insufficient to support personal jurisdiction over the website's operator.")

networks, ExoClick which is headquartered in Spain; Adxpansion, located in Canada; and Ero-Advertising, located in Holland. These three companies provide the actual advertisements displayed on the website; all Ideal does is provide banner advertising space on its site and the advertising network companies then selects the advertisements that are displayed when a person visits the website. This is the way that most advertising on the internet works. *Id.* Like all advertising networks, ExoClick, Adxpansion, and Ero-Advertising gear their ads to the location of the user. Visitors in France are shown French ads and visitors in Germany are shown German ads. Again, this has nothing to do with Ideal. Ideal simply contracts with the (non-United States based) advertising companies to provide banner space on its websites. *Id.*

Ideal does not itself offer any premium memberships. It has, on occasion, been approached by other companies who provide adult video memberships to enter into affiliate agreements with them. *Id.* When Ideal has experimented with these affiliate arrangements, the affiliate company creates what is known as a "white label site," which means they put SunPorno's logo on a site which they create, own, and run. *Id.* Currently, there is no premium option on the SunPorno.com website since there seemed to be little interest in it. *Id.* When the option did exist, a visitor who clicked on the "premium membership" button was sent to a third-party website which Ideal did not control and could not control. Again, this type of relationship is very common in the adult entertainment website industry and one must assume that Liberty Media is well aware that Ideal was not in control of the premium site or its terms and conditions. *Id.*

None of Ideal's websites, including SunPorno.com accept credit cards, nor has Ideal set up any credit card accounts with Visa, Mastercard or American Express to accept such payments. This is so because Ideal does not enter into financial transactions with visitors to its websites. This is true for visitors who may come from the United States or any other part of the world. *Id.*

### B.   THE FLORIDA LITIGATION

On September 26, 2011, LMH filed an action in the Southern District of Florida alleging the same violations of copyright as are alleged in this litigation. On November 17, 2011, having identified the proper parties to the litigation, LMH filed an amended complaint in which it named

as defendants all of the same defendants named in the present litigation.  *See* **Exhibit 7**, Amended Complaint in Florida action.  On December 9, 2011, LMH's counsel sent a request for waiver of formal service to Mr. Letyagin at his home address in the Czech Republic via UPS.  At the same time, LMH's counsel sent a request for waiver of formal service to Ideal in Seychelles. Both of these correspondence were received by the intended recipients.

In the Florida litigation, the Plaintiff alleged that personal jurisdiction was proper under either the Florida long arm statute or under the Federal long arm statute, Fed. R. Civ. P. 4(k)(2). *Id.*  LMH subsequently sought injunctive relief against Mr. Letyagin and Ideal.  On December 14, 2011, the Florida Court denied LMH's motion, specifically holding that LMH could not show a likelihood of success because the Court could not exercise personal jurisdiction over either defendant consistent with the requirements of due process.  Specifically, after first rejecting LMH's argument that personal jurisdiction was proper under Florida's long arm statute (s*ee* **Exhibit 6**, p. 6), the Court also rejected personal jurisdiction based on the federal long arm statute. *Id.* at pp. 7-10 ("Plaintiff has not shown that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum.  Plaintiff contends that Defendant has 'considerable' web traffic originating from the United states and has presented an exhibit showing that fifteen percent of the visitors to the website are from the United States.")

Following the Court's order, LMH's counsel proposed settlement discussions before LMH undertook the expense of formally serving the defendants.  On January 30, 2012, the Florida Court issued an order instructing LMH that if it did not effectuate service of process on the defendants by March 12, 2012, the case would be dismissed.  See **Exhibit 4.**  The Plaintiff did not serve the defendants (and do not appear to have attempted to serve the defendants), resulting in the dismissal of the Florida action.  See **Exhibit 5**.

## III.    ARGUMENT

### A.    STANDARD

"Where a defendant challenges the exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant."  *Speed Technologies, LLC v. Bully Dog Sales & Distribution, LLC*, 2011 U.S. Dist. LEXIS 86959 (D.

Nev. 2011), *citing Schwartzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9ᵗʰ Cir. 2004).   "The plaintiff has the burden of establishing personal jurisdiction by demonstrating jurisdiction is: (1) permitted under the applicable state's long-arm statute, and (2) that the exercise of jurisdiction does not violate federal due process." *Corbo v. Laessig*, 2012 U.S. Dist. LEXIS 43332, 9-10 (D. Nev. 2012), *quoting   Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).   Because Nevada's long-arm statute reaches to the full limits of due process, the Court need only decide whether the exercise of personal jurisdiction will comport with the constitutional requirements of due process. *Hoag v. Sweetwater Int'l.*, 857 F.Supp. 1420, 1424 (D. Nev. 1994).   In making its determination, the Court must analyze whether personal jurisdiction exists over each defendant separately.  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003)

A similar analysis occurs with respect to federal long arm jurisdiction under Fed. R. Civ. P. 4(k)(2).  Under Rule 4(k)(2), "a court may exercise jurisdiction when three requirements are met.  First, the claim against the defendant must arise under federal law.... Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction....  Third, the federal court's exercise of personal jurisdiction must comport with due process." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider contacts with the nation as a whole." *Id* at 462.

## B.   THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER MR. LETYAGIN OR IDEAL UNDER NEVADA'S LONG ARM STATUTE.

"For a non-resident defendant, the assertion of jurisdiction is constitutionally proper under the Due Process Clause of the Fourteenth Amendment only where there are continuous and systematic contacts with the forum state (general jurisdiction)... or when there are sufficient minimal contacts with the forum state such that the assertion of personal jurisdiction does not offend traditional notions of fair play and substantial justice (specific jurisdiction)." *Righthaven,*

1   *LLC v. Va. Citizens Def. League, Inc.*, 2011 U.S. Dist. LEXIS 67659, 3-4 (D. Nev. 2011)

2   (internal citations omitted).

3          In the present case, LMH has not alleged – and cannot allege – facts sufficient to subject

4   either Mr. Letyagin or Ideal to either general or specific personal jurisdiction in Nevada.

5                      **1.     General Jurisdiction**

6          "To establish general personal jurisdiction, the plaintiff must demonstrate the defendant

7   has sufficient contacts to 'constitute the kind of continuous and systematic general business

8   contacts that 'approximate physical presence.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai*

9   *Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002)(*quoting Bancroft & Masters, Inc. v.*

10  *Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000)*, modified, Yahoo! Inc. v. La Ligue Contre*

11  *Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir.2006)).   "[A] defendant whose

12  contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction

13  even if the suit concerns matters not arising out of his contacts with the forum." *Glencore Grain*,

14  284 F.3d at 1123 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415

15  n. 9, 104 S.Ct. 1868, 80 L. Ed. 2d 404).

16         Although the Complaint makes the conclusory statement that "the Defendants," as a

17  group have had "systemic and continuous contacts with the district," (*see* Complaint, ¶46), there

18  is not a single factual allegation made – nor could there be – to support this statement.[6]  To the

19  contrary, neither Mr. Letyagin nor Ideal have *any* contacts with Nevada, much less "systemic

20  and continuous contacts" which would "approximate physical presence."

21         Ideal does not maintain (and has never maintained) any servers within Nevada, has no

22  employees in (and has never had any in) Nevada, does not advertise in (and has never advertised

23  in) Nevada, owns no real estate in (and has never owned any real estate in) Nevada, pays no

24  taxes in (and has never paid taxes in) Nevada, and has no bank accounts in (and has never had

25  any bank accounts in) Nevada.  Neither Ideal nor SunPorno.com are registered to do business in

26  Nevada (nor have they ever been so registered).  *Letyagin Affidavit*, ¶10.  Similarly, Mr. Letyagin

27

---

[6] It is interesting that LMH feels comfortable making such an allegation given that it also admits that it does not
know the identity of six defendants who are identified only by nickname and fifty other "Doe" defendants.

28

09627-01/Motion to Dismiss - Final.doc

has no personal ties to Nevada.  He does not maintain any servers in Nevada, does not advertise in Nevada, does not own real estate in Nevada, and has no bank accounts in Nevada (nor has he ever done any of the forgoing).  *Letyagin Affidavit*, ¶13.  Indeed, Mr. Letyagin has never even visited the State of Nevada.  *Letyagin Affidavit*, ¶2.

A complete absence of contacts with Nevada cannot possibly be "systemic and continuous contacts," and, as such, LMH cannot demonstrate that the Court has general personal jurisdiction over either defendant.

## 2. Specific Jurisdiction

"Specific personal jurisdiction is established if plaintiff can show: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable." *Corbo v. Laessig*, 2012 U.S. Dist. LEXIS 43332, 9-10 (D. Nev. 2012), *citing  Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155-56 (9th Cir. 2006). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Corbo, supra, citing  Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995).

"Under the first prong of the specific jurisdiction test the plaintiff must establish either that the defendant: (1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum.  ...Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum.  Evidence of direction usually consists of directing conduct from outside the forum into the forum." *Corbo* at 9-10 (*internal citations omitted*).

Presumably, given the wholesale lack of facts alleged in the complaint which would support a finding of specific jurisdiction over the defendants, LMH intends to argue that the mere fact that the SunPorno.com website is accessible in Nevada (as it is in the rest of the free world),

where the Plaintiff claims to have a primary place of business,[7] is a sufficient basis for jurisdiction against Ideal and/or Mr. Letyagin.  It is not.

Because a "claim for copyright infringement sounds in tort, the plaintiff must prove that the defendants purposefully directed their actions at Nevada.  *Zuffa, LLC v. Showtime Networks, Inc.*, 2007 U.S. Dist. LEXIS 60711, *22 (D. Nev. 2007).  The court utilizes an "effects test to determine if the defendant (1) committed an intentional act, (2) expressly aimed at the forum, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.*, *quoting Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002).

Assuming, a*rguendo*, that the maintenance of a website is a sufficient act in and of itself to constitute an "intentional act," LMH nevertheless cannot meet the second or third prongs of the purposeful direction test.

First, the mere maintenance of a website available anywhere in the world (even an interactive one), does not meet the test of being "expressly aimed at the forum" for the very reason that it is equally available everywhere in the world.  *Medinah Mining, Inc. v. Amunategui*, 237 F. Supp. 2d 1132, 1136 (D. Nev. 2002)("Because anyone could access the discussion group, the court could not see how it could be inferred that the postings alone could be directed at residents of the forum.  ...there is no evidence that [the defendant] did any business with anyone in Nevada or that he directed his allegedly defamatory comments at Nevada.  He posted messages on a website that could be accessed by anyone around the world who had access to the Internet.  There is no evidence that any Nevada resident actually did access the alleged defamation"); *Zuffa, LLC v. Showtime Networks, Inc.*, 2007 U.S. Dist. LEXIS 60711 (D. Nev. 2007) (knowledge that copyright holder was located within the jurisdiction "by itself fails to

---

[7] Interestingly, although the Plaintiff alleges in this action that it is a California corporation with a principle place of business in Nevada, when it has initiated actions against non-resident defendants in California, it omitted this claim, stating instead that "Liberty is a California LLC with a mailing address of 302 Washington Street, Suite 321, San Diego, CA 92103."  *See, e.g., Liberty Media Holdings, LLC v. Travis Noble*, 11-CV-00571-JAH-BLM, Document No. 1 (S.D. Cal. 2011); *Liberty Media Holdings, LLC v. John Doe*, 11-CV-0774-IEG-WVG (S.D. Cal. 2011); *Liberty Media Holdings, LLC v. John Jacob Lee*, 11-CV-0578-JLS-BGS (S.D. Cal. 2011); *Liberty Media Holdings, LLC v. Henson*, 11-CV-0652-MMA-BLM (S.D. Cal. 2011).  In each of these actions alleging copyright infringement, LMH alleged that jurisdiction was proper in California because, *inter alia* – by allegedly infringing on the Plaintiff's copyrights, the defendants had "aimed his tortious acts toward this district with the knowledge that the negative consequences would be felt in this jurisdiction."

establish that Showtime and ProElite individually targeted Plaintiff"); *Cybersell, Inc. v.*

*Cybersell, Inc.,* 130 F.3d 414, 418-420 (9th Cir. 1997)("... so far as we are aware, no court has

ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction

in the plaintiff's home state. ... Rather, in each, there has been 'something more' to indicate that

the defendant purposefully (albeit electronically) directed his activity in a substantial way to the

forum state.  ...Cybersell FL did nothing to encourage people in Arizona to access its site, and

there is no evidence that any part of its business (let alone a continuous part of its business) was

sought or achieved in Arizona. ...There is no evidence that any Arizona resident signed up for

Cybersell FL's web construction services. It entered into no contracts in Arizona, made no sales

in Arizona, received no telephone calls from Arizona, earned no income from Arizona, and sent

no messages over the Internet to Arizona. ...In short, Cybersell FL has done no act and has

consummated no transaction, nor has it performed any act by which it purposefully availed itself

of the privilege of conducting activities, in Arizona, thereby invoking the benefits and

protections of Arizona law.  We therefore hold that Cybersell FL's contacts are insufficient to

establish 'purposeful availment')."

       Numerous other courts, in applying the effects test, have similarly held that, for specific

jurisdiction to be founded on actions expressly aimed at the forum state, the Plaintiff must prove

that such acts "are performed for the very purpose of having their consequences felt in the forum

state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390-91 (8th Cir. 1991)

(*quoting Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)).  *See*

*also Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359, 24-25 (N.D.

Iowa Jan. 17, 2012)("Although I accept as true Fraserside's allegations that xHamster

intentionally infringed Fraserside's registered copyrights and trademarks, these allegations,

alone, fail to demonstrate that xHamster 'uniquely or expressly aimed' its tortious acts at Iowa.

...Although xHamster's website is both commercial and interactive, as an Iowa district court

noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa

than at Uzbekistan.'"); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("If the defendant

merely operates a website, even a 'highly interactive' website, that is accessible from, but does

not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution"); *Toys "R" Us, Inc. V. Step Two, S.A.,* 318 F.3d 446, 452-54 (3d Cir. 2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction ... Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the [jurisdiction]."); *Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120, 1127 (S.D. Fla. 2006) (finding insufficient contacts in a patent infringement case since, among other reasons, "Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents" in the absence of "targeting or solicitation of Florida residents"); *ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents"); *Johnson v. Arden*, 614 F.3d 785, 797-798 (8th Cir. 2010)("...the Johnsons have failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri; thus *Calder* provides no support for their Lanham Act claim.")

In the present case, LMH has not alleged – nor can it allege – that the defendants "uniquely or expressly" aimed the SunPorno.com website at Nevada any more than they were able to allege in the Florida litigation that the website was "uniquely or expressly" aimed at Florida.  Indeed, the very fact that LMH has attempted to bring the same claims in two different jurisdictions proves the defendants' point.  Accordingly, as LMH cannot meet the second prong of the effects test and personal jurisdiction is, therefore, inappropriate in Nevada and the case must be dismissed.

Although the court need go no further, it is worth noting that LMH also cannot meet the third prong: that the defendants aimed their conduct at Nevada *knowing* that it would cause harm to the Plaintiff there.  Although the Plaintiff alleges that it is a California company with a primary place of business in Nevada, it does not allege (and cannot allege) that either of the defendants took some action knowing that harm would be felt in Nevada.  Putting aside the fact

- 12 -

that the complaint identifies no actions actually taken by either defendant which was aimed at Nevada, it also fails to properly allege that either Mr. Letyagin or Ideal knew that the Plaintiff would suffer harm in Nevada.  To the contrary, Exhibit 26 to the Plaintiff's Complaint – which contains the certificates of registration of the allegedly infringed-upon works – identifies the "Copyright Claimant" in each instance as "Liberty Media Holdings, LLC, dba Excelsior Productions, 302 Washington Street, STE 161, San Diego, CA 92103."  The certificates do not suggest in any way that the copyright owner is located in Nevada.  In other words, even if Mr. Letyagin or Ideal were aware that users were posting LMH's copyrighted works at the SunPorno.com website, there was no reason that they would have known that LMH would suffer any injury in Nevada, as opposed to California, where the public records indicated the Copyright Claimant was located.  This, too, is fatal to LMH's claim of specific jurisdiction in Nevada. *Zuffa, LLC*, *supra*, at *26 ("...there are no facts alleged here that Showtime and ProElite were aware that the allegedly infringing footage belonged to Plaintiff or that Defendants knew or should have known that the allegedly infringing footage would harm Plaintiff in Nevada. Because Plaintiff fails to show that ProElite and Showtime expressly aimed the alleged infringing telecast at Nevada, Plaintiff has not met its burden of showing purposeful direction under the effects test"); *Medinah Mining, Inc., supra* at 1137 (even a finding that the defendants engaged in a "foreign act with foreseeable effects in the forum state" was insufficient to find specific jurisdiction with the "something more" such as "targeting a known forum resident"); *Cybersell, Inc., supra* at 420 ("Nor does the "effects" test apply with the same force to Cybersell AZ as it would to an individual, because a corporation does not suffer harm in a particular geographic location in the same sense that an individual does. ...Cybersell FL's web page simply was not aimed intentionally at Arizona knowing that harm was likely to be caused there to Cybersell AZ")(internal citations omitted); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087-88 (9th Cir. 2000)(collecting 9th Circuit cases and discussing the requirement that the defendant have specific knowledge of the harm to be done in the forum to justify a finding of "express aiming.")  Because the Plaintiff has not, and cannot, allege facts sufficient to meet the third prong of the effects test, personal jurisdiction against Mr. Letyagin and Ideal does

not lie and the complaint against them must be dismissed.

**C.   THE PLAINTIFF CANNOT ESTABLISH JURISDICTION OVER MR. LETYAGIN OR IDEAL PURSUANT TO FED. R. CIV. P. 4(K)(2).**

Preliminarily, it bears repeating that this is the <u>second</u> Federal Court which has been asked to consider the question of whether LMH could assert federal long arm jurisdiction over Mr. Letyagin or Ideal.  And, because the question to be answered is whether LMH has alleged sufficient minimum contacts as between the defendants and the United States as a whole, the analysis is no different in Nevada than it was in Florida.  In the Florida action, the Court specifically concluded that jurisdiction could *not* be premised against Mr. Letyagin or Ideal under Fed. R. Civ. P. 4(k)(2):

> Specifically, Plaintiff has not shown that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum. Plaintiff contends that Defendant has "considerable" web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States. ...Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit.

> ... Here, Plaintiff has alleged that Defendant's website receives traffic and business from United States customers but has not met its burden of showing that Defendant did anything to target customers from the United States or even that anyone from the United States made a purchase on Defendant's website.

*Liberty Media Holdings v. Letyagin*, Case No. 11-62107, Docket No. 47, attached as Exhibit 6, pp. 7-10.

The Court should reach the same conclusion here.[8]  In the Ninth Circuit, a party asserting personal jurisdiction under Rule 4(k)(2) must prove three elements: (1) that the claims arise under federal law; (2) that the defendant is not subject to personal jurisdiction in any state court

---

[8] Although the technical requirements may not be met for formal issue preclusion, it would be perverse to allow LMH to jump from Federal Court to Federal Court asserting the same federal jurisdictional argument in hopes of finally finding a sympathetic court.  A certain level of deference to the findings of the Federal District Court in the Southern District of Florida is, therefore, appropriate in this case.  As the First Circuit has stated, albeit in a different context, a litigant should not be afforded "not only his allotted bite at the apple, but an invitation to gnaw at will." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005).

09627-01/Motion to Dismiss - Final.doc

in the United States; and (3) the exercise of personal jurisdiction comports with the constitutional requirements of due process.  *Holland America Line, Inc. v. Wartsila Corporation*, 485 F.3d 450, 461 (9th Cir. 2007).[9]  In the present case, it is only the third element which is in dispute.

Given Mr. Letyagin's and Ideal's wholesale lack of contacts with the United States, LMH cannot hope to show that jurisdiction can be asserted over them consistent with the Due Process Clause of the United States Constitution.  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider contacts with the nation as a whole."  *Id* at 462.

Indeed, in *Holland America Line, Inc.*, the Court rejected a finding of personal jurisdiction over the defendants despite the fact that the defendants maintained a website accessible in the United States, had advertised in marine publications distributed in the United States, sent marketing representatives into the United States, and had its representatives visit trade shows in the United States.  Nevertheless, the Court concluded that these "scant, fleeting, and attenuated" contacts with the United States were insufficient bases to assert personal jurisdiction over the defendants in the United States.  Indeed, the Court there noted that "in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the Rule."  *See also* Cepia, L.L.C. v. Alibaba Group Holding Ltd., 2011 U.S. Dist. LEXIS 129126, 19-20 (E.D. Mo. 2011)  ("Due process analysis concerning jurisdiction under Rule 4(k)(2) must be focused on whether the 'defendant purposely directed its activities at residents of the forum, and whether litigation results from alleged injuries that arise out of, or relate to those activities.'  Again, Plaintiff has not shown Alibaba Holding has purposely directed its activities at Missouri. ...Therefore, jurisdiction under Federal Rule of Civil Procedure 4(k)(2) is not proper

---

[9] This is the same test that was applied by the Southern District of Florida when it reached its conclusion that neither Mr. Letyagin nor Ideal were subject to personal jurisdiction in the United States pursuant to Rule 4(k)(2).

in this case")  *1ˢᵗ Technology, LLC v. Digital Gaming Solutions, S.A.*, 2009 U.S. Dist. LEXIS

27786 (E.D. Mo. 2009)(" the exercise of jurisdiction is consistent with the Constitution depends

on whether the defendant has sufficient contacts with the United States as a whole to justify the

exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment. ...Once

again, the question of due process concerns whether the foreign defendant purposefully directed

his activities at residents of the forum, and whether the litigation results from alleged injuries that

arise out of, or relate to those activities"); *Renaissance Pen Company v. Krone, LLC*, 2006 U.S.

Dist. LEXIS 21794 (E.D. Mo. 2006)("Here, the existence of jurisdiction is not consistent with

the Constitution.  Defendant does not have the minimum contacts with any state, nor the United

States as a whole, required to satisfy personal jurisdiction.")

Similarly, in *Pebble Beach Company v. Caddy*, 453 F.3d 1151 (9ᵗʰ Cir. 2006), the Ninth

Circuit rejected a series of arguments similar to those advanced by LMH here:

> ...First, Pebble Beach claims that because Caddy selected a '.com' domain name it shows
> that the United States was his 'primary' market and that he is directly advertising his
> services to the United States. Second, Pebble Beach asserts that his selection of the name
> 'Pebble Beach' shows the United States is his primary target because 'Pebble Beach' is a
> famous United States trademark. Third, Pebble Beach asserts that Caddy's intent to
> advertise to the United States is bolstered by the fact that Caddy's facilities are located in
> a resort town that caters to foreigners, particularly Americans. Finally, Pebble Beach
> asserts that a majority of Caddy's business in the past has been with Americans.
>
> As before, Pebble Beach's arguments focus too much on the effects prong and not enough
> on the 'something more' requirement. First, following the rationale articulated in
> Cybersell, Rio Properties, and Panavision, we conclude that the selection of a particular
> domain name is insufficient by itself to confer jurisdiction over a non-resident defendant,
> even under Rule 4(k)(2), where the forum is the United States. The fact that the name
> 'Pebble Beach' is a famous mark known world-wide is of little practical consequence
> when deciding whether action is directed at a particular forum via the world wide web.
> Also of minimal importance is Caddy's selection of a '.com' domain name instead of a
> more specific United Kingdom or European Union domain. To suggest that '.com' is an
> indicator of express aiming at the United States is even weaker than the counter assertion
> that having 'U.K.' in the domain name, which is the case here, is indicative that Caddy
> was only targeting his services to the United Kingdom. Neither provides much more than
> a slight indication of where a website may be located and does not establish to whom the
> website is directed. Accordingly, we reject these arguments.

1
2
3
4

> This leaves Pebble Beach's arguments that because Caddy's business is located in an area frequented by Americans, and because he occasionally services Americans, jurisdiction is proper. These arguments fail for the same reasons; they go to effects rather than express aiming. Pebble Beach's arguments do have intuitive appeal--they suggest a real effect on Americans. However, as reiterated throughout this opinion, showing 'effect' satisfies only the third prong of the Calder test--it is not the 'something more' that is required.

5
6

*Id. at* , 1159-60.

7

In the present case, neither Mr. Letyagin nor Ideal have any significant connections with

8

the United States.  Ideal does not advertise (and has not advertised) anywhere in the United

9

States, owns no real estate (and has never owned any real estate) anywhere in the United States,

10

pays no taxes (and has never paid taxes) anywhere in the United States, and has no bank

11

accounts (and has never had any bank accounts) anywhere in the United States.  Neither Ideal

12

nor SunPorno.com are registered to do business anywhere in the United States (nor have they

13

ever been so registered).  Ideal does not maintain any servers within the United States¸ enters

14

into no financial transactions with users in the United States (or anywhere for that matter), does

15

not host its domains with United States hosting companies, and does not register its domains

16

with United States based registrars.  *See* Letyagin Affidavit.

17

Mr. Letyagin himself owns no property in the United States, does not pay taxes in the

18

United States, has no bank accounts or other property in the United States, and, indeed, he has

19

never even visited the United States.  *Id.*  Such facts bely any argument that either Mr. Letyagin

20

or Ideal have sufficient minimum contacts to subject them to jurisdiction under Rule 4(k)(2)

21

consistent with the due process requirements of the United States Constitution.[10]

22

Because the Complaint does not – and cannot – allege sufficient facts to support a finding

23

of minimum contacts as between either Mr. Letyagin or Ideal and the United States as would be

24

required by the Due Process Clause of the Constitution, the Court cannot properly assert personal

25
26
27
28

---

[10] LMH's absurd attempts to (*see* Complaint, p. 55) to base jurisdiction on third-party banner advertisements which utilize the likeness of international porn star Ron Jeremy and which refer to the benefits of penis enlargement products in inches (as opposed to centimeters) add nothing of value to a federal jurisdictional argument.

09627-01/Motion to Dismiss - Final.doc

1    jurisdiction over either defendant and the case against them must be dismissed.

2                               **IV.    CONCLUSION**

3          For the reasons stated hereinabove, Defendants Ideal Consult, Ltd. and Sergej Letyagin

4    respectfully move for the dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack

5    of personal jurisdiction.

6          DATED this 2nd day of July, 2012.

7                                          **COTTON, DRIGGS, WALCH,**
                                           **HOLLEY, WOLOSON & THOMPSON**
8

9
                                           /s/ James D. Boyle
10                                         JAMES D. BOYLE, ESQ.
                                           Nevada Bar No. 008384
11                                         400 South Fourth Street, Third Floor
                                           Las Vegas, Nevada 89101
12
                                           EVAN FRAY-WITZER, ESQ. (*pro hac vice*
13                                         *application pending*)
                                           Massachusetts Bar No. 564349
14                                         Email: Evan@CFWLegal.com
                                           Ciampa Fray-Witzer, LLP
15                                         20 Park Plaza, Suite 804
                                           Boston, Massachusetts  02116
16                                         Telephone: (617) 426-0000

17                                         VALENTIN DAVID GURVITS, ESQ. (*pro hac*
                                           *vice application pending*)
18                                         Massachusetts Bar No. 643572
                                           Email: vgurvits@BostonLawGroup.com
19                                         BOSTON LAW GROUP, PC
                                           825 Beacon Street, Suite 20
20                                         Newton, Massachusetts  02459
                                           Telephone:(617) 928-1804
21
                                           *Attorneys for Defendants, Sergej Letyagin and*
22                                         *Ideal Consult, LTD.*

23

24

25

26

27

28

09627-01/Motion to Dismiss - Final.doc

1

## CERTIFICATE OF SERVICE

2      Pursuant to Fed. R. Civ. P. 5(b), I certify that on the 2nd day of July, 2012, I caused the

3  document entitled **DEFENDANTS SERGEJ LETYAGIN AND IDEAL CONSULT, LTD.'S**

4  **MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK**

5  **OF PERSONAL JURISDICTION**, to be served as follows:

6

7

| Attorneys of Record | Parties Represented | Method of Service |
|---|---|---|
| Marc J. Randazza, Esq. Randazza Legal Group 6525 West Warm Springs Rd., Suite 100 Las Vegas, Nevada  89118 E-mail:  mjr@randazza.com | Plaintiff, Liberty Media Holdings, LLC | ☐   Personal Service ■   Email/E-File ☐   Fax Service ☐   Mail Service |

8

9

10

11

12      DATED this 2nd day of July, 2012.

13

14                                          /s/ Kim Cooper_____
                                          An Employee of Cotton, Driggs, Walch,
15                                          Holley, Woloson & Thompson

16

17

18

19

20

21

22

23

24

25

26

27

28