Marc J. Randazza, Esq., NV Bar #12265
Ronald D. Green, Esq., NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax
mjr@randazza.com; rdg@randazza.com

Attorneys for Plaintiff,
Liberty Media Holdings, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC | Case No. 12-cv-00923-LRH-GWF |
| Plaintiff, | |
| vs. | **OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| SERGEJ LETYAGIN d/b/a SUNPORNO.COM, IDEAL CONSULT, LTD., "ADVERT", "CASTA", "TRIKSTER", "WORKER", "LIKIS", "TESTER" and DOES 1-50 | |
| Defendants | |

# TABLE OF CONTENTS

TABLE OF AUTORITIES ....................................................................................................................ii

I.    INTRODUCTION AND FACTUAL BACKGROUND ................................................. 1

II.   THE COURT HAS JURISDICTION OVER THE DEFENDANT ................................ 3

      A.   A Foreign Defendant is Subject to Suit in Any Judicial District ............................... 4

      B.   Rule 4(k)(2) Applies to this Case ............................................................................. 4

           1.   The Plaintiff's Claims Arise Under Federal Law ............................................. 5

           2.   The Defendants are Beyond the Reach of Any State Court of
                General Jurisdiction ......................................................................................... 5

           3.   Jurisdiction in the United States Would Not Offend Due Process Because
                the Defendants Have Extensive Contacts with the United States.................... 8

      C.   Purposeful Availment............................................................................................... 16

III.  IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO CONDUCT
      JURISDICTIONAL DISCOVERY .......................................................................... 18

IV.   CONCLUSION ....................................................................................................... 19

i

# TABLE OF AUTORITIES

*Carafano v. Metrosplash.com, Inc.*
207 F. Supp. 2d 1055 (C.D. Cal. 2002) ...........................................................16

*Dean v. Motel 6 Operating L.P.*
134 F.3d 1269 (6th Cir. 1998) ..........................................................................18

*Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*
2011 U.S. Dist. LEXIS 36640 (D Nev. Apr. 4, 2011)...................................... 4-5

*Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*
2012 U.S. Dist. LEXIS 19255 (D. Nev. Feb. 16, 2012) ........................... 2, 4-5

*Fraserside IP LLC v. Letyagin*
Civil Case no. 11-cv-03041 (N.D. Iowa 2011).................................................9

*Getz v. Boeing Co.*
654 F.3d 852 (9th Cir. 2011) ..........................................................................1, 4

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*
256 F.3d 548 (7th Cir. 2001) ..........................................................................6, 8

*Righthaven LLC v. South Coast Partners, Inc.*
2011 U.S. Dist. LEXIS 12802 (D. Nev. Feb. 5, 2011) ............................ passim

*Righthaven, LLC v. Va. Citizens Def. League, Inc.*
2011 U.S. Dist. LEXIS 67659 (D. Nev. June 23, 2011)........................... passim

*Rio Props., Inc. v. Rio Int'l Interlink*
284 F.3d 1007 (9th Cir. 2002) ...........................................................................3

*Silver Ring Splint Co. v. Digispint, Inc.*
2007 U.S. Dist. LEXIS 25522 (W.D. Va. Apr. 5, 2007) ....................................6

*Steven Henry Adams v. Unione Mediterranea Di Sicurta*
364 F.3d 646 (5th Cir. 2004) .............................................................................6

*Synthes (U.S.A.) v. GM Dos Ries .Jr. Ind. Com. De Equip. Medico*
563 F.3d 1285 (Fed. Cir. 2009).................................................................... 4-5

*United States v. Swiss American Bank, Ltd.*
191 F.3d 30 (1st Cir. 1999)................................................................................4

*World Tanker Carriers Corp. v. MV & YA Mawlaya*
99 F.3d 717 (5th Cir. 1996) ..........................................................................3-4, 8

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*
952 F. Supp. 1119 (W.D. Pa 1997)..................................................................17

ii

**STATUTES**

28 U.S.C. § 1391 ...................................................................................................... 1, 4

28 U.S.C. § 1338 ........................................................................................................... 5

47 U.S.C. § 230 ..................................................................................................... 16-17

Fed. R. Civ. P. 4(k)(2) ........................................................................................ passim

iii

1       Plaintiff Liberty Media Holdings (Liberty) brought suit against foreign defendants in this
2  district, under 28 U.S.C. § 1391 (d), which provides that a foreign defendant can be sued in any
3  district. In symbiosis, Federal Rule of Civil Procedure 4(k)(2) operates as the federal long-arm
4  statute, and under that rule, jurisdiction is proper over the Defendants in the United States. Fed.
5  R. Civ. P. 4(k)(2), permits federal courts to exercise personal jurisdiction over a defendant that
6  lacks contacts with any single state if the complaint alleges federal claims and the defendant
7  maintains sufficient contacts with the United States as a whole. *Getz v. Boeing Co.*, 654 F.3d
8  852 (9th Cir. 2011). Under the law, jurisdiction lies within this district, unless the Defendants
9  concede to jurisdiction in another state, which they declined to do.

10       In this case, the claims arise under federal law and the Defendants have extensive
11  contacts with the United States (and purposely target the United States market). In light of the
12  Defendants' motion and supporting declaration, it is impossible to make earnest arguments that
13  the Nevada long-arm statute applies without the benefit of jurisdictional discovery.
14  Nevertheless, jurisdiction is clearly proper under Fed. R. Civ. P. 4(k)(2), and thus, the Court can
15  dispense with jurisdictional discovery and an analysis of the Nevada long-arm statute as long as
16  the Federal long-arm Rule applies. It does; we should move on to the merits.

17       **I. INTRODUCTION AND FACTUAL BACKGROUND**

18       Defendants are aliens (and alter egos of each other), purporting to operate outside the
19  United States and outside of the jurisdiction of any Court in the United States of America.
20  However, the Defendants have extensive beneficial business contacts in the United States, and
21  choose to victimize multiple American companies by infringing on their copyrights. One of
22  those companies is Liberty, a Nevada-based company.

23       Plaintiff's investigator viewed the Defendant's website in Nevada.   Plaintiff's
24  investigator viewed the unlawful redistribution of its works in Nevada. The investigator joined
25  and created an account from Nevada, and confirmed with SunPorno.com support that SunPorno
26  ships products to Nevada. The harm from the Defendants' unlawful activities is aimed at this
27
28

1

1  Nevada company, and the damage from the infringement on the site is felt in Nevada.[1]  While
2  the Defendant argues that it operates wholly extraterritorially, this is demonstrably false. The
3  Defendants may have set up a corporation outside the United States, and since receiving notice
4  of this dispute, moved their domain names offshore.[2] Nevertheless, the Defendant still maintains
5  significant contacts with the United States, makes income from the United States, and causes
6  damage from its unlawful activities in the United States.

7       Intellectual property piracy operations cannot be allowed to evade liability because they
8  use a mail drop in the Seychelles while selling goods and services to Americans, contracting with
9  Americans, advertising to Americans, and taking American money, with a business model built
10  upon infringing the copyrights of American businesses. If they can, then this Court will create a
11  legal wormhole permitting piracy operations to engage in their unlawful activities while evading
12  justice simply by smirking at its victims from behind a transparent film of mail drops and post
13  office boxes. The instant dispute involves a scheme that is specifically designed to steal from
14  Americans and then to use the stolen wares to make its profits from Americans. If a foreign
15  entity wants to steal from us, contract with us, sell goods and services to us, and amass our
16  dollars, then it must face our courts when it runs afoul of our laws.

17  \\
18  \\
19  \\
20  \\
21  \\
22  \\
23

24  [1] This district has recently held analogously that, the District of Nevada, "has an interest in
    discouraging injuries that occur within its boundaries, including injuries resulting from patent
25  infringement." *Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*, 2012 U.S. Dist.
    LEXIS 19255, 19-20 (D. Nev. Feb. 16, 2012).
26  [2] They claim this was done for the sake of costs, however, **Exhibits 18-19** demonstrate the minor
27  difference in cost for the two different registrars. The price of a .com registration with Moniker
    is S9.59; with EvoNames the price is $8.25. See **Exhibits 18-19.** Therefore, the transfer saved
28  the Defendants a whopping $1.34.

2

## II. THE COURT HAS JURSIDICTION OVER THE DEFENDANT

The Defendant devotes most of the motion on an irrelevant side-show[3] and arguing that the Nevada long-arm statute does not apply.[4]  The Plaintiff acknowledges that the Defendant's declarations shift the burden for demonstrating jurisdiction on to the Plaintiff's shoulders. Without the benefit of jurisdictional discovery, the Plaintiff cannot fully completely refute the Defendant's arguments against the applicability of the Nevada long-arm statute.  Nevertheless, jurisdiction is proper under Fed. R. Civ. P. 4(k)(2).  Therefore, rather than belabor this Court with jurisdictional discovery disputes and inevitable motions to compel and motions for protective orders, the Plaintiff concedes that without jurisdictional discovery, it cannot meet its burden under the Nevada long-arm statute.  If the Court wishes to save time, the Plaintiff concedes that without jurisdictional discovery to indicate to the contrary, the Nevada long-arm statute should not be the focus of the analysis, and the Court should concentrate on Fed. R. Civ. P. 4(k)(2).

If the Court wishes to get the simplest way to resolve the jurisdictional issue with the least amount of irrelevance and distraction, the Court should tear off the first thirteen pages of the Defendants' motion and focus on the real issue: Fed. R. Civ. P. 4(k)(2).  Everything in the

---

[3] The side-show is a discussion of the previously filed Florida action. The Plaintiff initially filed in Florida, since the SunPorno.com domain name was physically present there at the time, and the Plaintiff worked to file where the court had jurisdiction over the domain name registration. The Florida court gave the Plaintiff 120 days to serve the Defendants.  Since the Defendants evaded service and the 11th Circuit is not bound by *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), the Plaintiff was unable to comply, so the court dismissed the case without prejudice.  The Defendant moved the domain name out of Florida, thus removing any reason to file there instead of in the Plaintiff's home jurisdiction.  The Defendants point to this procedural history as if it were relevant.  It is not.  Had the Defendants returned a waiver of service, or had the Defendants accepted service, the case would have proceeded in Florida.  Had they acknowledged that one of the six addresses Plaintiff had for the Defendants was correct, they may have been personally served.  The Defendants declined to do so, and the Plaintiff (despite great efforts and expense, ECF 21-1, ECF 23, ECF 24) could not definitively find the Defendants to serve them.  We are here now, as a result of that evasion.  That evasive behavior should not be used by the Defendants as a shield.

[4] The Plaintiff has a good-faith belief that the Nevada long-arm statute would apply, but does not wish to waste party or judicial resources in conducting jurisdictional discovery to prove it, when the proper application of Fed. R. Civ. P. 4(k)(2) will achieve the exact same result.

3

1   first thirteen pages is irrelevant to the eventual order that this Court should issue. Under the

2   Federal long-arm jurisdiction conferred by Rule 4(k)(2), jurisdiction is indisputable.

3   **A.   A Foreign Defendant is Subject to Suit in any Judicial District**

4        Under 28 U.S.C § 1391(d), "[a]n alien may be sued in any district." Fed. R. Civ. P.

5   4(k)(2) provides for federal personal jurisdiction in cases such as this. Rule 4(k)(2) acts as a

6   "federal long-arm statute." *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir.

7   1999); *Getz*, 654 F.3d 852.

8        The Advisory Committee Notes to Fed. R. Civ. P. 4(k)(2) explain the purpose of the

9   Rule. This Rule was enacted to:

10
11
12
13
14
15
16
> Correct the gap in the enforcement of federal law. Under the former rule, a problem was presented when the defendant was a non-resident of the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule.

17   **B.   Rule 4(k)(2) Applies to This Case**

18   As the United States Court of Appeals for the Fifth Circuit has explained:

19
20
21
22
> Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims arising under *federal law* when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state.

23   *World Tanker Carriers Corp.* v. *MV & YA Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996). The 9th

24   Circuit is in agreement. *Getz*, 654 F.3d at 858-859.

25        In *Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*, 2011 U.S. Dist. LEXIS

26   36640 (D Nev. Apr. 4, 2011), this court dealt with this very issue.

27
28
> [P]ursuant to FRCP 4(k)(2), this Court may also exercise jurisdiction where a claim arises under federal law, the defendant does not have minimum contacts with any one state to support jurisdiction, but where its

4

contacts with United States as a whole are sufficient to meet the due process requirements. Synthes, 563 F.3d at 1293-94.

*Elan Microelectronics I*, 2011 U.S. Dist. LEXIS 36640 at *3 (citing *Synthes (U.S.A.) v. GM Dos Ries Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)).

> "Rule 4(k)(2), on the other hand, establishes jurisdiction over a defendant when process has been served and three requirements are met: '(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process.'"

*Elan Microelectronics Corp. v. Pixcir Microelectronics Co.,* 2012 U.S. Dist. LEXIS 19255 at*6 (D Nev. Feb. 16, 2012) (citing *Synthes*, 563 F.3d at 1294).

## 1. The Plaintiff's Claims Arise Under Federal Law

The analysis under the first prong is simple: This case is a copyright infringement case, thus it arises under federal law. Copyright is governed by title 17 of the U.S. Code, and federal courts have exclusive jurisdiction over copyright cases. 28 U.S.C. §1338(a).

## 2. The Defendants are Beyond the Reach of Any State Court of General Jurisdiction

The second prong is less simple. While the Plaintiff does not concede that no facts will ever reveal that the Defendants are beyond the reach of the Nevada long-arm statute, the Plaintiff concedes this point prior to jurisdictional discovery to facilitate the 4(k)(2) analysis, because whether the Nevada long-arm statues applies or 4(k)(2) applies, the result will be the same – this Court must assert jurisdiction over the Defendants.

Had the Defendant acknowledged Rule 4(k)(2)'s applicability, it may have presented arguments relevant to whether jurisdiction is proper in another state. Under Fed. R. Civ. P. 4(k)(2), a foreign defendant has the privilege of conceding jurisdiction in an alternate state and then the plaintiff bears the burden of supporting its chosen forum. Had the Defendants conceded that jurisdiction would be proper in Maine, North Dakota, or Hawaii, the Plaintiff would bear a burden that could only be overcome after jurisdictional discovery. Since the Defendants declined to do so, the Defense waived its ability to concede jurisdiction in another state, and chose the "all the marbles" approach by arguing that no U.S. Court could claim jurisdiction.

5

1 Thus, if the Plaintiff can show that jurisdiction is proper in the United States under Rule 4(k)(2),
2 then the Plaintiff's choice of forum prevails, and here we litigate the merits.

3       At this time, the Plaintiff is not privy to information that would satisfy it (much less the
4 Court) that any other alternate state could indisputably exercise jurisdiction over the
5 Defendants.[5]  However, the Plaintiff does not bear that burden under Rule 4(k)(2).  If the
6 defendant challenges jurisdiction in the forum state and declines to identify any other where suit
7 is possible, then the federal court asserts jurisdiction under Rule 4(k)(2). *ISI Int'l, Inc. v. Borden*
8 *Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("[A] piecemeal analysis of the
9 existence *vel non* of jurisdiction in all fifty states is not necessary. Rather, so long as a defendant
10 does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction.");
11 see also *Silver Ring Splint Co. v. Digispint, Inc.*, 2007 U.S. Dist. LEXIS 25522 (W.D. Va. Apr.
12 5, 2007) ("Defendant knows very well what activities it has conducted in the other 49 states, and
13 deliberate coyness as to these activities is not a justification for denying jurisdiction here.
14 Accordingly, the burden is more properly placed on Defendant to come forward with evidence
15 that another forum would be correct."); *Steven Henry Adams v. Unione Mediterranea Di Sicurta*,
16 364 F.3d 646, 651 (5th Cir. 2004).

17       The Defendant has declined to suggest an alternate forum, let alone come forward with
18 evidence that another one of the 49 states is more appropriate. Therefore the second prong of
19 Rule 4(k)(2) is satisfied. Given that the portions of Rule 4(k)(2) which act analogously to a long-
20 arm statute are resolved in favor of this Court asserting jurisdiction, we must simply turn to the
21 question of whether it would offend due process to say that jurisdiction in the United States is
22 improper.

23       The Defendants claim to have insufficient contacts with Nevada, meanwhile spreading
24 out their United States contacts over multiple states, leaving no single state as a clear nexus of
25 American activity. The following table shows the United States contacts discovered by the
26 Plaintiff to date:

27 _____

28 [5] In fact, if the Plaintiff had such information, it would have filed suit there.

6

| Connection to U.S. | District | ECF/Exhibit |
|---|---|---|
| Previous Server Location | S.D. Ohio | ECF 1-15 |
| Current Server Location | E.D. Virginia | Exhibit 6, ECF 16 at FN 2, ECF 16-1 |
| Original Registrar for SunPorno.com | S.D. Florida, Oregon, C.D. California | ECF 1-11, ECF 1-12 |
| Previous DMCA Agent | M.D. Florida | Exhibit 20 |
| Current DMCA Agent | S.D. Florida | Exhibit 7 |
| Targeted Advertising | Nevada | Exhibit 15, Exhibit 16 |
| SunPorno Store | Nevada | Exhibit 17 |
| Damages Felt by Plaintiff | Nevada | ECF 1 |
| SunPorno Ships Products from L.A. | C.D. California | Exhibit 17 |
| SunPorno Registration Uses U.S. States and Zip Codes | Nationwide | Exhibit 8 |
| Over 3 million U.S. Visitors in June 2012 | Nationwide | Exhibit 2 |
| 17.9 % of Traffic is U.S.-based (most from any single country) | Nationwide | Exhibit 4 |
| Ideal Consult websites saw nearly 6.5 million U.S. hits in June 2012 | Nationwide | Exhibit 5 |
| U.S. is "good country" for traffic | Nationwide | Exhibit 14 |
| SunPorno.com is in U.S. English | Nationwide | ECFs 1-1, 1-5 to 1-10, 1-17 to 1-19, 1-22, 1-23 and 1-27; Exhibits 1, 7-10, and 15-17 |
| Advertisements use U.S. Measurements | Nationwide | ECF 1-6, ECF 1-7 |
| Advertisements use U.S. Actors | Nationwide | ECF 1-5, ECF 1-8, ECF 1-9 |

With ties to multiple states across the country and multiple ties to the nation as a whole that are not state specific, where should the Defendants be pursued if not in the jurisdiction that is the home of the party whose rights they willfully violated? *Righthaven LLC v. South Coast Partners, Inc.*, 2011 U.S. Dist. LEXIS 12802,*4 (D. Nev. Feb. 5, 2011) ("[T]his court remains bound by its express holding that where the defendant 'willfully infringed copyrights owned by [the plaintiff], which, as [the defendant] knew, had its principal place of business in the [forum],' '[t]his fact alone is sufficient to satisfy' the Calder effects test."); *Righthaven, LLC v. Va. Citizens Def. League, Inc.*, 2011 U.S. Dist. LEXIS 67659, *9-10 (D. Nev. June 23, 2011). Thus, jurisdiction is proper.

7

**3. Jurisdiction in the United States Would Not Offend Due Process Because the Defendants Have Extensive Contacts with the United States**

It is important that the Court recognize the breadth of the due process analysis. Under Rule 4(k)(2), the Court does not ask whether due process would be offended if jurisdiction were asserted in the state, but rather whether due process tolerates the suit in the United States as a whole. "Under Rule 4(k)(2), the constitutional requirements are the same as with any other personal jurisdiction inquiry, i.e., relatedness, purposeful availment, and reasonableness. They are simply applied as to the United States as a whole, rather than a particular state." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).

> The defendant's national contacts take center stage because the rule applies only to situations in which federal courts draw jurisdictional authority from the federal sovereign (unreinforced by 'borrowed' state statutes), and, thus, the applicable constitutional requirements devolve from the Fifth rather than the Fourteenth Amendment.

*World Tanker Carriers Corp.*, 99 F.3d at 720.

First of all, let us not forget that the Defendants are alleged to have committed an intentional tort, namely copyright infringement. Complaint ¶ 1. They did so by infringing upon copyrights owned by the Plaintiff, which it had to know were created by an American entity. Complaint ¶ 93. As this very Court held:

> "Ultimately, unless and until the Ninth Circuit overrules Columbia Pictures, this court remains bound by its express holding that where the defendant 'willfully infringed copyrights owned by [the plaintiff], which, as [the defendant] knew, had its principal place of business in the [forum],' '[t]his fact alone is sufficient to satisfy' the Calder effects test."

*South Coast Partners, Inc.*, 2011 U.S. Dist. LEXIS 12802 at *4 (citations omitted). See also *Va. Citizens Def. League, Inc.*, 2011 U.S. Dist. LEXIS 67659 at * 9-10 ("This Court agrees with a recent district court case which stated that 'unless and until the Ninth Circuit overrules Columbia Pictures, this court remains bound by its express holding.'") (citing *South Coast Partners*). By this reasoning alone, the Court should rule that jurisdiction is proper. However, even in the

8

1 absence of this clear rule, the Defendants would still be subject to jurisdiction in the United
2 States under Rule 4(k)(2).

3       The Defendants have such pervasive and systematic economic ties to the United States
4 there is no doubt that they are subject to jurisdiction in the United States. Given the Defendants
5 extensive contacts with the United States, they cannot seriously argue that they lack minimum
6 contacts with the forum **nation**, or that they could not reasonably anticipate being haled into
7 court in the United States. Indeed, these Defendants have already been sued in the United States
8 for copyright infringement. See *Fraserside IP LLC v. Letyagin et al.*, Civil Case no. 11-cv-
9 03041 (N.D. Iowa 2011). Thereafter, they continued to infringe upon the Plaintiff's copyrights.
10 See **Exhibit 1** (infringements that the Plaintiff found after the Complaint had been filed). This
11 would seem to eliminate any claim by the Defendants that they could not reasonably anticipate
12 being sued in the United States. Of course, even if these defendants were not already litigating
13 in the United States, they still engage in so much commerce with the United States that Due
14 Process would not be so much as mildly uncomfortable, let alone offended, by the exercise of
15 jurisdiction over these Defendants.

16       The SunPorno.com website was visited by more than 3,035,500 unique American internet
17 users in June of 2012. **Exhibit 2.** A full 17.9% of SunPorno.com's traffic comes from the
18 United States. **Exhibit 4.** Of course, the Defendant may respond that "only" 17.9% of its traffic
19 is American, but the United States represents (by far) its largest market.[6] *Id.* More than three
20 million Americans **per month** engage in an interactive transaction with the sunporno.com
21 website. The Defense can not seriously contend that it can serve more than three million
22 Americans per month, yet it would offend Due Process for it to be compelled to answer for
23 unlawful actions in the United States.

24       While the number of *Nevada* visitors to the site is irrelevant to the Rule 4(k)(2) analysis,
25 the Plaintiff is confident that a significant number of sunporno.com's visitors are Nevadans.

26 _____

27 [6] By comparison, its second largest market is Germany with 10.2%, followed by India with
8.2%. Accordingly, its next two markets combined are about equal to its American market.
28 Italy, Japan, and Great Britain follow with 5.2%, 4%, and 3.4%, respectively. **Exhibit 4.**

1 However, this can only be truly ascertained through discovery. As a matter of statistics, it is
2 more likely than not that 26,712 Nevadans visit sunporno.com every month[7]. Meanwhile, all of
3 the infringements claimed in the Complaint were viewed and documented from Liberty's Las
4 Vegas, Nevada offices. Therefore, even the Nevada long-arm statute would seem to be satisfied
5 by such a number – especially so in light of the Court's rulings in *South Coast Partners* and *Va.*
6 *Citizens Def. League.*

7 To add to the weight of the Plaintiff's position, these numbers only apply to one of the
8 Defendants' websites. The Defendants operate a virtual horde of websites. ECFs 1-13 and 1-14
9 are lists of the other known websites the Defendants operate. The Defendants operate at least
10 1,150 other websites, which received traffic from at least 6,478,455 Americans in the month of
11 June 2012 alone.[8] The Defendants enter into millions of transactions with Americans every
12 month. The fact is that the United States of America represents the Defendants' largest market –
13 and the Defendants do business with more Americans per month than the entire population of at
14 least 35 states.[9]

15 In addition, the Defendants regularly engage in contracts and other business transactions
16 with Americans – aside from the 6.5 million Americans it caters to per month. Letyagin
17 originally registered the domain name sunporno.com with a Florida address (ECF 1-11); the
18 domain name was registered with full knowledge that the domain name registrar was an
19 American company (ECF 1-12, showing Moniker with its addresses in Portland, OR, Los
20 Angeles, CA, and Pompano Beach, FL); the SunPorno.com website was hosted in Ohio (ECF 1-
21 15) and is now hosted in Virginia (**Exhibit 6,** ECF 16 at FN 2, ECF 16-1 ¶ 11); the largest
22 number of customers are from the United States (**Exhibit 4**); and its terms and conditions were

23

24 [7] Nevada's population of 2,733,322 is .88% of the United States population of 311,591,917. If
we assume that each state in the United States is represented in the SunPorno traffic
25 proportionally to their population, 26,712 Nevada residents visit the website monthly.
[8] This number has been determined by utilizing the traffic reporting at Compete.com and only
26 including the results for websites receiving over 20,000 unique American visitors. See **Exhibit**
27 **5.** Declaration of Henry Leonard.
[9] As of the 2010 census, 35 states had populations under 6.4 million. See
28 http://www.census.gov/popfinder/, last accessed on July 19, 2012.

10

1  entirely in not only English, but American English (ECF 1-22; **Exhibit 7**). Now, remember the
2  1,150 other domains? They, too, were registered in the United States until the Defendants
3  moved them offshore, presumably to impede any eventual collection efforts.[10] Furthermore, on
4  information and belief, the Defendants have engaged in business transactions with the company
5  LaTouraine Inc., which does business as Naughty America, a California company.[11]

6       SunPorno.com displays advertisements featuring an American actor, Ron Jeremy. ECF
7  1-6; 1-7. Presumably the ad is authorized by Mr. Jeremy. Other ads clearly target Americans,
8  such as advertisements for penis enlargement, which use inches – not centimeters. ECF 1-5; 1-8;
9  1-9. The website's signup form clearly and unequivocally targets United States residents. It has
10 drop down menus thereupon which are pre-populated with United States as the member's
11 country of origin and a space to fill in U.S. zip codes. ECF 1-23. Furthermore, at the time of
12 this dispute arising, every page on SunPorno.com displayed an American flag in the upper-right
13 hand corner of the page to select English – not the Union Jack. ECFs 1-5 through 1-10; 1-27. Its
14 terms of use clearly show a Florida based agent for service of copyright complaints, Constantin
15 Luchian, in Fort Lauderdale, Florida. **Exhibit 7**. When a user opts to sign up for a premium
16 membership on SunPorno.com, they are directed to a website that links to terms and conditions
17 of membership that clearly targets Americans. ECF 1-22. These terms and conditions go so far
18 as to explicitly list the American states in which the minimum age for majority is 21 and list

19
20 [10] The Defendants claim that this was a simple cost-saving measure, However, it certainly came
    at a suspicious time – the largest transfer was on September 28, 2011 (ECF 1-15) – two days
21 after the Plaintiff filed the complaint in the Florida action, casting doubt upon the Defendants'
    claim that this was a coincidental cost-saving measure. The price of a .com registration with
22 Moniker is $9.59; with EvoNames the price is $8.25. See **Exhibits 18-19**. Therefore, moving
    SunPorno.com from Moniker to EvoNames saved them $1.34 per year. Even calculating every
23 domain name they have (1,150 of them), this shift – coming immediately upon notification of the
    dispute – saved no more than $1,541. Meanwhile, the Defendants have likely spent more than
24 that just trying to explain the shift. Furthermore, the Plaintiff is aware that Moniker often grants
25 discounts to its larger customers. Discovery may eventually show that there was no cost savings
    at all.
26 [11] This is provided on information and belief, with the inadmissible information coming from a
    reliable source. If the Court is unpersuaded that 4(k)(2) is satisfied, but evidence of the
27 Defendant's dealings with La Touraine, Inc. could change the Court's mind, the Court should
28 permit jurisdictional discovery on the issue.

11

1 them by their United States postal abbreviations: "AL, MS, NE, WY". *Id.* at 2. Further, these
2 terms explicitly state that the user represents and warrants that they "have not notified any
3 governmental agency, **including the U.S. Postal Service**, that [they] do not wish to receive
4 sexually oriented material." (emphasis added) *Id.* at 2. The site then goes on to link to a list of
5 restricted zip codes from the United States. *Id.* at 3. Does this sound like a company that does
6 not foresee being haled into an American Court?[12]

7     Defendant's claimed location in The Republic of Seychelles is nothing more than a post
8 office box containing a shell company created for the purpose of evading authority. This entity
9 that admits its primary business is "porno" expects this Court to believe that it chose to locate in
10 a     nation     where     pornography     is     legally     prohibited?     *See*
11 http://www.thecommonwealth.org/Internal/139213/179921/traveller_information/, last accessed
12 on July 16, 2012. Given this fact, the Plaintiff would not even have the ability to vindicate its
13 rights in a Seychellois court – as it would be akin to an American Plaintiff suing in an American
14 court to enforce a contract for the sale of cocaine. Given the location of Seychelles, in the
15 middle of the Indian Ocean, its miniscule population[13], and the fact that pornography is banned
16 there, it is likely that Defendant and all persons related to Defendant website have never resided
17 in nor even visited the Seychelles. Letyagin claims he and the entity Ideal Consult Ltd. did not
18 do lots of things in Nevada or the United States, (have employees, own real estate, pay taxes, and
19 have a bank account); it is quite certain they did not do those things in the Seychelles either.

20     Defendants assert by affidavit that SunPorno.com does not itself offer premium
21 membership, because once a person clicks on the "premium membership" button, they are sent to
22 a website which Defendants did not control and could not control. This is largely unbelievable

23

24 [12] This program was previously linked to through the FAQ and on pages displaying videos. The
links were deleted once the Plaintiff made it clear that they were evidence of United States
25 jurisdiction being proper, but the program remains active at www.sunporno.com/premium.php,
last accessed on July 17, 2012.
26 [13] The World Bank currently reports a population of 87,972 for the Seychelles. See
27 http://web.worldbank.org/WBSITE/EXTERNAL/COUNTRIES/AFRICAEXT/SEYCHELLESE
XTN/0,,menuPK:367513~pagePK:141159~piPK:141110~theSitePK:367495,00.html,     last
28 accessed July 17, 2012.

12

1  and legally irrelevant.  See *South Coast Partners*, 2011 U.S. Dist. LEXIS 12802 at *13-14
2  (despite the dispute being based around a passive website, jurisdiction was still proper) (citing
3  *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1143 (N.D. Cal. 2005)).
4  The FAQ page on SunPorno.com clearly indicated that viewers could obtain the high definition
5  videos by signing up for premium membership. ECF 1-10. It also contained (and still contains)
6  information on what to do if a copyrighted video is found on SunPorno – it permits a report to
7  SunPorno about the abuse. ECF 1-10, **Exhibit 7.**  This report goes to a UPS store in Fort
8  Lauderdale. **Exhibit 7.**  For the Defendants to claim that the United States is of no importance to
9  their business stretched credibility to the point that it snaps.

10      Plaintiff provides the screen shots of the sequence a user goes through to join as a
11  premium member.  The exhibit shows that the person is directed to a website page on
12  SunPorno.com: "Sunporno.com/premium.php."[14]  This series of screen shots follows the steps
13  that the surfer takes to join the SunPorno premium membership site. **Exhibit 8.** At the bottom
14  of that premium sign up page are links for Terms of Service, DMCA statement, and 2257
15  Compliance notice that all go to webpages that begin with "www.sunporno.com." **Exhibit 7**
16  (Terms and Conditions), **Exhibit 9** (DMCA Statement), **Exhibit 10** (2257 Statement).
17  Defendant's affidavit thus appears to be wildly inaccurate.  However, even if the premium
18  membership sign up did send a person to another website, this would not relieve Defendants of
19  liability or deprive the court of jurisdiction. An owner has complete control over what is shown
20  on its website.  SunPorno set up the premium membership, and if in fact this means that
21  SunPorno is sending surfers to join other websites, SunPorno still derives a financial benefit
22  from this service and engages in a contract with these sites for its American traffic and revenue.
23  The referral to another site is not done out of altruism.  It is done for compensation, and the
24  reason the internet surfer has gotten that far is due to the stolen content appearing on Defendant's
25  website, and the Defendants' commercial interests.

26

27  [14] While the Defendants have now removed this information from the FAQ, this premium page
28  was still active the morning of July 17, 2012.

13

1          Defendant also claims that it has no control over the advertising on its own website.
2 Evidence should not be necessary to cast doubt upon this wild assertion, but some will be
3 provided anyway. The Defendant claims that advertising on the site is sold by a 3rd party –
4 Exoclick. No evidence is provided, but let us take the Defendants at their word. Advertising
5 *might* be sold by Exoclick, but Defendant's affidavit does not say all advertising is sold by
6 Exoclick. Accepting, *arguendo*, that Exoclick is what the Defendants say it is, and it does what
7 the Defendants say it does, the links directly from SunPorno.com for potential advertisers leads
8 us to the "TGP Alliance" website. **Exhibit 11.** At the bottom right corner of the Sunporno
9 webpage is a link that says, "Advertise". This link goes directly to the webpage
10 TGPAllicance.com where it provides details of advertising opportunities on SunPorno.com.
11 **Exhibit 11.** Why would Defendant infer that ExoClick sells all the advertising on
12 SunPorno.com if the link directly from SunPorno.com for advertisers leads to TGP Alliance?
13 (and TGP Alliance is owned by the same Defendants). See **Exhibit 13.**

14          The TGP Alliance website claims "TGP Alliance owns and operates over 50 free adult
15 sites, running over 3,500,000 unique hit per day." See **Exhibit 11**. Then, the TGP Alliance lists
16 its websites, with SunPorno listed as one of its "gold" websites. **Exhibit 12.** Given the common
17 ownership, how can the Defendants claim that they do not control any of their own advertising?

18          Although Defendants claim that they have no say in the advertising on their own
19 property, it is absurd to think the Defendants do not control the advertising on their own website,
20 and the declaration of the Defendant is most suspect. Readily available public information lays
21 these claims bare.

22          On the TGP Alliance network website, advertisers are solicited to pay for ad placement
23 on TGP Alliance network sites. **Exhibit 12.** When an advertiser desires to purchase advertising,
24 that advertiser is directed to "Purchase Spots" at tgpalliance.com/purchase.html. On that page,
25 under the option EPASSPORTE (a Los Angeles based company), the potential advertiser is
26 instructed to "Send the amount of money you wish to deposit to Epassporte account
27 latouraine_sergej specifying the following info in comments….". **Exhibit 13.** This account
28 ownership, assumed to be in the same Sergej who is a named defendant here, can only be

14

1 confirmed through the discovery process. When you make a payment to this Los Angeles based
2 company (Declaration of Marc J. Randazza), the money goes into an account that, more likely
3 than not, belongs to Mr. Letyagin.

4      The Plaintiff will indulge, if the Court would like more. The Defendants solicit internet
5 salespeople to send surfers, or "traffic" the Defendants websites. The first listed "good country"
6 is the United States. **Exhibit 14.** The list is not alphabetical, nor does it appear to be random.
7 The Defendants know that the United States is their most lucrative market and demonstrably
8 target this market. If the Defendant is offering to pay for American traffic, how can it seriously
9 contend that it is not aiming its conduct at the United States? Defendants' premium membership
10 permits payment in U.S. dollars, and is thus targeted to United States citizens. Complaint ¶ 75.
11 SunPorno also invokes U.S. trademark and copyright laws in its terms of service. **Exhibit 7.**
12 The connections to the United States simply go on and on and on, the more you look, even
13 without the benefit of jurisdictional discovery.

14      Defendants have knowledge of the value of Plaintiff's copyrighted works. The
15 Defendants also know that they can make serious profits by selling services that are completely
16 derived from copyright infringement. Defendants' infringement of Liberty's copyrights is aimed
17 at Plaintiff, who is located in Nevada, thus independently justifying the exercise of jurisdiction.
18 *South Coast Partners*, 2011 U.S. Dist. LEXIS 12802 at *4; *Va. Citizens Def. League*, 2011 U.S.
19 Dist. LEXIS 67659 at *9-10. For the same reason, the infringement is aimed at harming Plaintiff
20 in its business, and Defendant knew and knows that Plaintiff is an American company located in
21 Nevada and was aware that Defendants' infringing activities would cause Americans to suffer
22 harm. Even if Defendant did not know the Plaintiff was a Nevada company, Defendant knew
23 that it was infringing on *somebody's* content and that content obviously came from the United
24 States. Complaint ¶ 64; see also *South Coast Partners*, 2011 U.S. Dist. LEXIS 12802 at *4; *Va.*
25 *Citizens Def. League*, 2011 U.S. Dist. LEXIS 67659 at *9-10.

26      By now, the Court should have been well satisfied that Fed. R. Civ. P. 4(k)(2) and the due
27 process clause are satisfied. However, the Plaintiff will continue just in case the Court feels that
28 a little more will help: The Defendants' website contains geographically targeted advertising that

15

1   specifically targets Americans. When a person in Nevada logs on to the website, that Nevada
2   resident is served with ads specific to his/her location a pop-up ad appears. Recently, a Liberty
3   employee logged on to the SunPorno website to have a pop-up advertise "LIVE from Las
4   Vegas." The Liberty office is located in Las Vegas, Nevada. **Exhibit 15.** Another screen grab
5   shows an advertisement where "extrasensually" remarked "im in Las Vegas." **Exhibit 16.**
6   Furthermore, a customer support person from the SunPorno.com store confirmed that all
7   materials in the online store could be shipped to Las Vegas and that the store's headquarters was
8   in Los Angeles. **Exhibit 17.** Clearly, Defendants are targeting, engaging, and profiting from
9   Nevada residents with its website. If the Defendants can sense that surfers are coming from the
10   United States, then the Defendants could have chosen to simply "geo block" Americans and/or
11   Nevadans. Instead, Defendants chose to specifically target, expressly aim, at the wallets of
12   Nevadans and Americans alike.

13        Strangely enough, for a party claiming that he should be immune from suit in the United
14   States, Letyagin seemed to eschew doing business with foreign registrars and hosting companies
15   in favor of U.S.-based companies (until this dispute erupted). The Defendants not only do
16   significant business in the United States, but seem to prefer the benefit of doing business here. It
17   is clear that SunPorno actively participates in the United States market.

18 **C.**   **Purposeful Availment**

19        None of the above contacts with the United States are merely fortuitous. The Defendants
20   expressly aimed at this market, and darn well hit their target – 6.5 million times per month. The
21   Defendants successfully cultivated the United States market for advertisers and visitors. The
22   SunPorno website itself is highly interactive and none of its contacts with the United States are
23   mere happenstance.

24        Tube sites like SunPorno.com are highly interactive. Federal law defines an "interactive
25   computer service" as "any information service, system, or access software provider that provides
26   or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2); see
27   *Carafano v. Metrosplash.com, Inc.*, 207 F. Supp. 2d 1055, 1065-66 (C.D. Cal. 2002) (an online
28   dating website is an "interactive computer service" under the CDA). In fact, if this were not an

16

1   intellectual property case, Section 230 would immunize SunPorno from suit, given its status as

2   an interactive website. Clearly under *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, SunPorno is at the

3   most interactive end of the spectrum. 952 F. Supp. 1119 (W.D. Pa 1997). In fact, if the

4   Defendants wish to claim that SunPorno is not interactive, this would be laughable. However, if

5   the Court were blinded by its laughter and agreed, then Section 230 does not apply, and thus the

6   Plaintiff would have a laundry list of additional claims to add to an amended complaint.

7        SunPorno.com operated as a highly interactive website in the following ways (See

8   generally Declaration of Erika Dillon, hereinafter "Dillon Decl."). First and foremost, as a "tube

9   site," the site does nothing unless and until a viewer presses "play" on the particular video. Of

10  the 6 movies currently at issue (more will be added to an Amended Complaint), users viewed

11  them over 172,000 times. These interactions alone led us to this dispute and the Plaintiff's

12  claimed actual damages. Additional, the Plaintiff's investigator determined:

13        1)   SunPorno required users to sign up or register in order to fully utilize the
14   site. See Dillon Decl. ¶ 5.

15        2)   SunPorno allowed users to create their own individual usernames.  See
16   Dillon Decl. ¶ 6.

17        3)   SunPorno allowed users to share specific information on a user-created
18   profile. See Dillon Decl. ¶ 8.

19        4)   SunPorno profiles could contain a multitude of personal information,
20   including name and a profile picture. See Dillon Decl. ¶ 7-8.

21        5)   SunPorno allowed users to upload their own videos to the SunPorno
22   network. See Dillon Decl. ¶ 10.

23        6)   SunPorno allowed users to add in specific descriptions of the videos they
24   uploaded.  See Dillon Decl. ¶ 11.

25        7)   SunPorno allowed users to rate videos. See Dillon Decl. ¶ 12.

26        8)   SunPorno allowed users to comment on videos. See Dillon Decl. ¶ 12.

27        9)   SunPorno allowed users to add videos to a list of favorites. See Dillon
28   Decl. ¶ 12.

17

10)     SunPorno allowed users to save videos for later viewing. See Dillon Decl. ¶ 5.

11)     SunPorno allowed users to "friend" other SunPorno members in order to further interact with each other. See Dillon Decl. ¶ 13.

12)     SunPorno allows users to send private messages to other SunPorno members. See Dillon Decl. ¶ 13.

13)     SunPorno allowed users to copy and paste the code for any video and place this video on a separate website in an embeddable player. See Dillon Decl. ¶ 14.

14)     SunPorno allowed users to purchase items through the "Store." See Dillon Decl. ¶ 18.

15)     SunPorno allowed users to search for videos based on keywords. See Dillon Decl. ¶ 15.

16)     SunPorno allowed users to search to interact and exchange pictures with other users in their "community." See Dillon Decl. ¶ 16.

17)     SunPorno allowed users to watch specific channels. See Dillon Decl. ¶ 15.

18)     SunPorno allowed users connect via live video chats on the "live cams" page located at sunpornochat.com. See Dillon Decl. ¶ 17.

It doesn't get much more interactive than that.

Given that Letyagin's contacts with the Unites States are so pervasive, consistent, and numerous, and that the SunPorno website was so highly interactive, his only remaining argument against jurisdiction seems to be that he resides so far away from the forum that it would be burdensome to travel to Las Vegas.

## III. IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO CONDUCT JURSIDCTIONAL DISCOVERY

If Defendants continues to maintain its position that personal jurisdiction is improper and the Court is remotely concerned that there is any question, the Plaintiff requests leave to conduct jurisdictional discovery of and to conduct an evidentiary hearing. See *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998). It would seem that such an exercise

18

1  would be an unnecessary waste of resources, given the overwhelming factual and legal support
2  for the maintenance of jurisdiction under Rule 4(k)(2), but the Plaintiff requests this in the
3  alternative.

## IV. CONCLUSION

5      Piracy of copyrighted works is not new to the entertainment field. Music, movies, videos
6  and books have been copied and distributed without authorization or compensation to the rightful
7  owner for as long as creative people have memorialized their ideas on paper. In the past, copies
8  were easier to spot and distribution of unauthorized works more difficult. With the advent of the
9  Internet and the ability to replicate digital files *ad infinitum*, the ease of pirating copyrighted
10  material has contributed to the explosion of unauthorized material. The global reach of the
11  Internet allows website operators to hide behind borders, fictional names or outdated addresses,
12  thwarting attempts to seek compensation for the unauthorized use of copyrighted content.
13  Traditional geographic borders have no meaning on the Internet, further compounding the
14  difficulty facing legitimate copyright owners attempting to enforce their rights against
15  unauthorized users. Legitimate copyright owners face a steep hill to enforce their rights when
16  their works can be replicated at lightning speed by far away entities, only to be sold back to the
17  legitimate owner's customers in its home market and the pirates claim immunity from
18  prosecution. Plaintiff, a legitimate Las Vegas based company with full ownership of United
19  States copyrights, documented numerous infringements of its works from its Las Vegas location.
20  The SunPorno.com website contains advertising directly targeted at Nevada residents and
21  interacts directly with Nevada residents, competing with Plaintiff for customers by selling
22  Plaintiff's own works.

23      Defendants argue that claims for infringement of U.S. copyrights, rightfully owned by a
24  Nevada company, and infringed upon to produce income from Internet users and advertisers in
25  the U.S., may not be litigated in the United States. Defendants targeted American works,
26  American users, and American dollars. The Defendants targeted Nevada internet users and
27  United States advertisers, infringed upon the copyrights of a Nevada company, are properly and
28  fairly under the jurisdiction of this Court. The due process requirements for Defendant to be

19

1  haled into this court have been met.  Since the Defendants have declined to stipulate to an

2  alternative U.S. forum, the Plaintiffs choice, its home forum, prevails.  The case should remain

3  here.

4
   Dated: July 19, 2012                          Respectfully Submitted,
5                                                 s/Marc J. Randazza

6                                                 Marc J. Randazza, Esq., (12265)
                                                  mjr@randazza.com
7                                                 Ronald D. Green, Esq., (7360)
8                                                 rdg@randazza.com
                                                  Randazza Legal Group
9                                                 6525 W. Warm Springs Rd., Suite 100
                                                  Las Vegas, NV 89118
10                                                (888) 667-1113
11                                                (305) 437-7662 fax

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on July 19, 2012.

Dated: July 19, 2012

Respectfully Submitted,
*s/Marc J. Randazza* _____

Marc J. Randazza, Esq., (12265)
mjr@randazza.com
Ronald D. Green, Esq., (7360)
rdg@randazza.com
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax