1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                    * * *

9    LIBERTY MEDIA HOLDINGS, LLC,          )
                                           )
10                    Plaintiff,           )        02:12-CV-00923-LRH-GWF
                                           )
11   v.                                    )
                                           )        ORDER
12   SERGEJ LETYAGIN, d/b/a                )
     SUNPORNO.COM, IDEAL CONSULT,          )
13   LTD., "ADVERT", "CASTA", "TRIKSTER",  )
     "WORKER", "LIKIS", "TESTER" AND       )
14   DOES 1-50,                            )
                                           )
15                    Defendants.          )
                                           )
16   _____)

17          This is a copyright dispute. Before the court is defendants Sergej Letyagin and Ideal

18   Consult, Ltd.'s ("Ideal") Motion to Dismiss for Lack of Personal Jurisdiction (#16[1]). Plaintiff

19   Liberty Media Holdings, LLC ("Liberty Media") has responded (#28), and Letyagin and Ideal have

20   replied (#30). Also before the court is Liberty Media's Motion to Strike (#34), to which Letyagin

21   and Ideal have responded (#37).

22   **I.     Facts and Procedural History**

23          Both Letyagin and Liberty Media run websites on which users can view pornographic

24   videos. (Complaint #1, p. 2; Letyagin and Ideal's Motion to Dismiss #16, Ex. 1, p. 1.) Liberty

25   Media has alleged that Letyagin and his company Ideal have infringed its copyrights in at least six

26
     _____
            [1] Refers to the court's docket number.

such videos. Liberty Media claims that Letyagin and Ideal copied Liberty Media's videos and posted them on Ideal's own websites, including SunPorno.com, the website at issue here.

Letyagin is currently a resident of the Czech Republic, and Ideal is a Seychellois corporation. (Letyagin and Ideal's Motion to Dismiss #16 at Ex. 1, pp. 1-2). Letyagin has neither resided in nor visited the United States. (*Id*. at Ex. 1, p. 1.) He does not maintain servers in the United States, he does not advertise there, and he has never paid United States taxes. (*Id*.)

Letyagin is Director of Technology for Ideal. (*Id*.) Ideal does not advertise in the United States, it has never paid United States taxes, and it does not have any employees in the United States. (*Id*. at Ex. 1, p. 3.) Ideal does, however, contract with a company that provides server space on servers located in the United States. (*Id*.) Ideal also contracts with foreign companies who advertise to United States residents through pop-up and banner ads on SunPorno.com. (*Id*. at Ex. 1, p. 5.) The SunPorno website had been registered with an Internet registrar located in the United States, but it is now registered with a foreign registrar.[2] (*Id*. at Ex. 1, pp. 3-4.)

---

[2] Some background on registrars:

Every computer connected to the Internet has a unique Internet Protocol ("IP") address. IP addresses are long strings of numbers, such as 64.233.161.147. The Internet [domain name system] provides an alphanumeric shorthand for IP addresses. The hierarchy of each domain name is divided by periods. Thus, reading a domain name from right to left, the portion of the domain name to the right of the first period is the top-level domain ("TLD"). TLDs include .com, .gov, .net, and .biz. Each TLD is divided into second-level domains identified by the designation to the left of the first period, such as "example" in "example.com" or "example.net." . . . Each domain name is unique and thus can only be registered to one entity. . . .

A domain name is created when it is registered with the appropriate registry operator. A registry operator maintains the definitive database, or registry, that associates the registered domain names with the proper IP numbers for the respective domain name servers. The domain name servers direct Internet queries to the related web resources. A registrant can register a domain name only through companies that serve as registrars for second level domain names. Registrars accept registrations for new or expiring domain names, connect to the appropriate registry operator's TLD servers to determine whether the name is available, and register available domain names on behalf of registrants.

(continued...)

2

1    While SunPorno does not offer "premium memberships" currently, it has offered such

2    memberships in the past. (*Id*. at Ex. 1, p. 5.) These memberships took the form of access to "white

3    label sites"–sites on which SunPorno agreed to put its logo but did not create, own, or run. (*Id*. at

4    Ex. 1, p. 6.)

5    **II.    Jurisdiction under Federal Rule of Civil Procedure 4(k)(2)**

6           The parties agree that jurisdiction under Federal Rule of Civil Procedure 4(k)(2) is at issue

7    here.[3] The appropriate exercise of jurisdiction under this Rule, commonly referred to as the federal

8    long-arm statute, invokes three requirements. "First, the claim against the defendant must arise

9    under federal law. Second, the defendant must not be subject to the personal jurisdiction of any

10   state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must

11   comport with due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)

12   (citations omitted). The plaintiff bears the burden of proving the first and third requirements. *Id*.

13   However, "absent any statement from [the defendant] that it is subject to the courts of general

14   jurisdiction in another state, the second requirement of Rule 4(k)(2) is met." *Holland America Line*

15   *Inc. v. Wartsila N. America, Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (collecting cases).

16          Here, Letyagin has not asserted that he and his company are subject to the courts of general

17   jurisdiction in another state. Furthermore, since Liberty Media has only asserted claims under the

18   Copyright Act, Liberty Media has successfully demonstrated that its claims "arise under federal

19   law." Thus, the remaining requirement is whether the exercise of personal jurisdiction comports

20   with due process.

21   ///

22

23          [2](...continued)
24   *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 698-99 (9th Cir. 2010) (quoting *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 464 F. Supp. 2d 948, 951-53 (N.D. Cal. 2006)).

25          [3] In light of the court's decision below, the court need not consider jurisdiction under Nevada's
26   long-arm statute.

**A.  Minimum Contacts under Rule 4(k)(2)**

"The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Id*. at 462. To establish that personal jurisdiction over the foreign defendant is proper, then, Liberty Media must show that Letyagin and Ideal have at least "'minimum contacts' with [the United States] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[4]

When a defendant challenges the exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Id*. Where, as here, the court receives only written materials, the plaintiff need only make a prima facie showing of jurisdiction through its pleadings and affidavits to avoid dismissal. *Id.* The plaintiff cannot simply rest on the bare allegations of its complaint; however, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id.*

A three-part test applies to determine whether the exercise of specific jurisdiction satisfies the requirements of due process: (1) the non-resident defendant must have either purposefully directed his activities at the United States or purposefully availed himself of the protection of its laws; (2) the claim must arise out of the defendant's United States-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice—*i.e.*, it must be reasonable. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (en banc). The plaintiff bears the burden of establishing the first two prongs, and

---

[4] While personal jurisdiction may be either general or specific, here the court examines only specific personal jurisdiction over the defendants. Liberty Media's conclusory allegation that the court has general jurisdiction over Letyagin and Ideal is not credible.

1  if the plaintiff succeeds "the burden then shifts to the defendant to 'present a compelling case' that

2  the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting

3  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). The court measures the contacts

4  with the United States forum at the time the claim arose. *See Farmers Insurance Exchange v.*

5  *Portage La Prairie Mutual Insurance Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

6       **B.  Purposeful Availment or Direction**

7       Although the term "purposeful availment" is often used as shorthand to identify the first

8  prong, it encompasses both purposeful availment and purposeful direction, which "are, in fact, two

9  distinct concepts." *Schwarzenegger*, 374 F.3d *at 802*. Purposeful availment usually applies in cases

10  sounding in contract and is typically established by evidence of the defendant's actions in the

11  forum, such as executing or performing a contract there.  *Id*. By contrast, purposeful direction

12  usually applies in cases sounding in tort and is typically established by evidence of the defendant's

13  activities outside the forum that are directed at the forum. *Id*. at 803. As copyright infringement is

14  often characterized as a tort, purposeful direction is the proper analytical framework for this case.

15  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

16       Purposeful direction is determined under the "effects" test of *Calder v. Jones*, 465 U.S. 783

17  (1984). The effects test imposes three requirements: "the defendant allegedly must have (1)

18  committed an intentional act, (2) expressly aimed at the [United States], (3) causing harm that the

19  defendant knows is likely to be suffered in the [United States]."  *Yahoo!*, 433 F.3d at 1206

20  (citation, brackets and internal quotations omitted). Importantly, notwithstanding its label, the

21  "effects" test is not satisfied merely by a foreign act with foreseeable effects in the forum; there

22  must be "something more"—namely, "express aiming" at the forum state. *Bancroft & Masters, Inc.*

23  *v. Augusta National Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Calder*, 465 U.S. at 789).

24  ///

25  ///

26  ///

The cases addressing jurisdiction under Rule 4(k)(2) have often turned on the "express aiming" requirement.[5] *See Pebble Beach*, 453 F.3d at 1159-60; *Graduate Management Admission Council v. Raju*, 241 F. Supp. 2d 589, 598-99 (E.D. Va. 2003). In *Raju*, for instance, the court considered jurisdiction over an Indian website that sold copyright-infringing test booklets. The court held that "specific ordering information for United States customers," prices listed in dollars, testimonials from United States citizens, and advertisements directed at Americans sufficed to show that the defendant "specifically directed his electronic activity at the United States." *Id.* at 598. Similarly, in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003), the court found that Rule 4(k)(2) supported personal jurisdiction where the defendant website knew a significant number of its users were American and where the defendant was "constructively aware" of commercial agreements entered into with Americans "daily." On the other hand, in *Pebble Beach*, the Ninth Circuit held that a ".com domain name," the use of a famous American trademark, and a record of American customers did not successfully demonstrate "express aiming." 453 F.3d at 1159. Notably, each of these Rule 4(k)(2) cases is a website case, at the heart of which is an inquiry into "the nature and quality of commercial activity that an entity conducts over the Internet." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011) (quoting *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Here, the nature and quality of Ideal's contacts with the American forum are potentially sufficient to support personal jurisdiction under Rule 4(k)(2). A court in the Northern District of Iowa recently concluded the same thing in a similar case. In *Fraserside IP L.L.C. v. Letyagin*, 2012 WL 3241760, — F. Supp. 2d —, (N.D. Iowa Aug. 7, 2012), the plaintiff Fraserside–an Iowa subsidiary of a Nevada pornography company–sued Letyagin for copyright infringement involving videos posted to SunPorno.com. Evaluating minimum contacts under Rule 4(k)(2), the court

---

[5] For those keeping score, "express aiming" is a subfactor of "purposeful direction," which is a subfactor of "purposeful availment," which is a subfactor of due process.

1    considered the volume of SunPorno's visitors from the United States, SunPorno's ongoing

2    contractual relationships with United States residents, the hosting of the website in the United

3    States, and SunPorno's membership terms (priced, for example, in United States dollars). *Id.* at

4    *11. The court found that "[w]hile these allegations might support specific jurisdiction over

5    defendants, [the plaintiff] has not provided [the court] with an adequate evidentiary basis to accept

6    them." *Id.*

7        The same is true here. Indeed, Liberty Media has made almost identical allegations.[6] (*See*

8    Complaint #1 at Ex. 15 (hosting in the United States), Ex. 22 (membership terms); Liberty Media's

9    Opposition #28 at Ex. 4 (volume of United States visitors to SunPorno.com).) And Liberty Media's

10   allegations suffer from identical evidentiary defects: "Rule 901 of the Federal Rules of Evidence

11   requires authentication of evidence. [Liberty Media's print-outs from] [p]rivate web-sites, however,

12   are not self-authenticating." *Fraserside*, 2012 WL 3241760 at *11 n. 9 (collecting cases).

13   Therefore, as in the Iowa action, Liberty Media should be permitted limited jurisdictional discovery

14   before the court rules on its jurisdiction over Letyagin and Ideal.

15   **C. Jurisdictional Discovery**

16       In this Circuit, a district court has broad discretion to permit or deny jurisdictional

17   discovery. *Laub v. U.S. Department of the Interior*, 342 F.3d 1080, 1093 (9th Cir.2003). "A

18   plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain

19

20       [6] As noted above, Ideal rents out space on SunPorno.com to third-party advertisers, but it does

21   not itself control the content of the advertisements. Third-party advertisements on a website may
     support specific personal jurisdiction in conjunction with something more. *Mavrix Photo, Inc. v. Brand*

22   *Technologies, Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) ("The fact that the advertisements targeted
     California residents indicates that Brand knows—either actually or constructively—about its California

23   user base, and that it exploits that base for commercial gain by selling space on its website for
     advertisements."). Liberty Media infers that the third-party ads were targeted at an American audience

24   because of pricing in dollars and, inventively, because the website's advertisements for penis
     enlargement products describe results in inches, not in metric units. (Complaint #1 at Ex. 5.) However,

25   since the "something more" is lacking, the court does not reach the effect of SunPorno's third-party

26   advertisements on jurisdiction over Letyagin and Ideal.

jurisdictional discovery." *See Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010 WL 3515759, *3 (N.D. Cal. Sept. 8, 2010) Rather, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093. This standard has been met here.

**III.    Motion to Strike**

Liberty Media has moved to strike Letyagin's second affidavit on the grounds that it raises new arguments for the first time in a reply brief. The court has reviewed the affidavit and finds that it responds specifically to Liberty Media's own allegations. Therefore, the Motion to Strike shall be denied.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Letyagin and Ideal's Motion to Dismiss for Lack of Personal Jurisdiction (#16) is DENIED without prejudice.

IT IS FURTHER ORDERED that Liberty Media is granted discovery limited to the issue of the court's personal jurisdiction over Letyagin and Ideal. Such discovery must be completed on or before May 31, 2013.

IT IS FURTHER ORDERED that Liberty Media's Motion to Strike (#34) is DENIED.

IT IS SO ORDERED.

DATED this 13th day of February, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE